# No. 24-1550

# In the
# United States Court of Appeals
# for the Eighth Circuit

JEFFERSON COUNTY,

*Plaintiff-Appellee,*

v.

DANNIE E. WILLIAMS, M.D., et al,

*Defendants,*

EXPRESS SCRIPTS, INC. and OPTUMRX, INC.,

*Defendants-Appellants.*

---

Appeal from the United States District Court
for the Eastern District of Missouri – St. Louis,  No. 4:23-cv-01539-MTS.
The Honorable Matthew T. Schelp, Judge Presiding.

## JOINT BRIEF OF DEFENDANTS-APPELLANTS
## EXPRESS SCRIPTS, INC. and OPTUMRX, INC.

MICHAEL LYLE
JONATHAN G. COOPER
CHRISTOPHER G. MICHEL
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
1300 I St. NW, Suite 900
Washington, DC 20005
(202) 538-8000

CHRISTOPHER J. LANG
NICHOLS LANG & HAMLIN, LLC
1795 Clarkson Road, Suite 230
Chesterfield, MO 63017
(314) 429-1515

*Counsel for Express Scripts, Inc.*

BRIAN D. BOONE
MICHAEL R. HOERNLEIN
ALSTON & BIRD LLP
Vantage South End
1120 South Tryon Street
Suite 300
Charlotte, NC 28203
(704) 444-1000

BRADLEY J. SCHLOZMAN
HINKLE LAW FIRM LLC
1617 North Waterfront Pkwy, Suite 400
Wichita, KS 67206
(316) 267-2000

*Counsel for OptumRx, Inc.*

 

# SUMMARY OF THE CASE

Plaintiff-Appellee is Jefferson County, Missouri (**the County**). Defendants-Appellants are Express Scripts, Inc. (**Express Scripts**) and OptumRx, Inc. (**OptumRx**)—pharmacy benefit managers (**PBMs**) who administer prescription-drug plans for clients including federal agencies. The County brought this suit in Missouri state court, seeking relief under Missouri public nuisance law based on the alleged role of the PBMs and others in harms caused by prescription opioid abuse. After receipt of expert liability reports showing that the County would rely on prescription claims processed by the PBMs for federal clients, the PBMs removed the suit to the U.S. District Court for the Eastern District of Missouri under the federal officer removal statute. The district court granted the County's motion to remand but stayed execution of the remand pending this appeal.

The Court should set this case for oral argument. The case involves important questions about the proper construction of the federal officer removal statute, 28 U.S.C. § 1442(a)(1), as well as the timing provisions of the removal procedure statute, 28 U.S.C. § 1446(b). Oral argument will allow the parties to address those legal issues and their application to the record, which includes significant procedural complexities. Oral argument will also allow the parties to address the County's pending motion to dismiss the appeal for lack of jurisdiction. The Court should allow 15 minutes of argument per side.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eighth Circuit Local Rule 26.1A, Defendant Express Scripts, Inc., states that its sole parent company is Evernorth Health, Inc. All interests in Evernorth Health, Inc., are held by The Cigna Group, a publicly traded company. The Cigna Group has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

*/s/ Jonathan G. Cooper*

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eighth Circuit Local Rule 26.1A, Defendant OptumRx, Inc. states that it is not a publicly traded entity. OptumRx is a wholly owned subsidiary of OptumRx Holdings, LLC. OptumRx Holdings, LLC is a wholly owned subsidiary of Optum, Inc. Optum, Inc. is not a publicly traded entity. Optum, Inc. is a wholly owned subsidiary of United HealthCare Services, Inc. United HealthCare Services, Inc. is not a publicly traded entity. United HealthCare Services, Inc. is a wholly owned subsidiary of UnitedHealth Group Incorporated, which is publicly traded on the New York Stock Exchange. No publicly traded entity owns 10% or more of UnitedHealth Group Incorporated stock.

*/s/ Brian D. Boone*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................. 1

JURISDICTIONAL STATEMENT................................................ 3

STATEMENT OF ISSUES...................................................... 4

STATUTORY PROVISIONS INVOLVED ...................................... 5

STATEMENT OF THE CASE ................................................... 5

    A.    Legal Background .................................................... 6

    B.    Factual and Procedural Background ......................... 8

    C.    The Decision Under Review.................................... 14

SUMMARY OF ARGUMENT ................................................. 16

ARGUMENT ................................................................... 18

STANDARD OF REVIEW ..................................................... 18

I.    THE PBMs' 2023 FEDERAL OFFICER REMOVAL WAS
    TIMELY ................................................................. 19

    A.    When An Initial Pleading Does Not Explicitly Disclose
        Grounds for Federal Officer Removal, Removal Is Timely
        Within 30 Days Of Service Of A Paper Unambiguously
        Providing Grounds For Such Removal ..................... 19

    B.    The Initial Pleading Did Not Explicitly Disclose Grounds
        for Federal Officer Removal And Its Prior Removal And
        Remand On Other Grounds Do Not Bear On The
        Timeliness Of The Present Removal....................... 23

    C.    The 2022 Red Flag Analysis Did Not Unambiguously
        Provide Grounds For Federal Officer Removal....................... 31

D. The PBMs Timely Removed Within 30 Days Of The 2023 Expert Discovery Providing Grounds For Federal Officer Removal ................................................................... 39

II. THE PBMs' 2023 FEDERAL OFFICER REMOVAL WAS PROPER ........................................................................ 40

A. The PBMs Satisfied All Elements Of Federal Officer Removal.................................................................... 41

B. The County's Purported Disclaimer Did Not Sever The Connection Between Its Claims And The PBMs' Acts For Federal Officers ................................................... 44

CONCLUSION ........................................................................ 48

# TABLE OF AUTHORITIES

**Page**

## Cases

*Akin v. Ashland Chem. Co.*,
  156 F.3d 1030 (10th Cir. 1998) .......................................................... 39

*Atwell v. Bos. Sci. Corp.*,
  740 F.3d 1160 (8th Cir. 2013) ............................................................ 26

*Bosky v. Kroger Texas, LP*,
  288 F.3d 208 (5th Cir. 2002) .............................................................. 22

*Buljic v. Tyson Foods, Inc.*,
  22 F.4th 730 (8th Cir. 2021) ......................................................... 18, 21

*California v. Eli Lilly & Co.*,
  2023 WL 4269750 (C.D. Cal. June 28, 2023) .................................... 47

*California v. Express Scripts*, *Inc.*,
  2024 WL 841197 (C.D. Cal. Feb. 28, 2024) ....................................... 47

*Chapman v. Powermatic, Inc.*,
  969 F.2d 160 (5th Cir. 1992) .............................................................. 20

*City of Creve Coeur, Mo. v. DirecTV LLC*,
  58 F.4th 1013 (8th Cir. 2023) ............................................................ 28

*City of St. Louis v. Benjamin Moore & Co.*,
  226 S.W.3d 110 (Mo. 2007) ............................................................... 44

*County Bd. of Arlington County v. Express Scripts Pharmacy, Inc.*,
  996 F.3d 243 (4th Cir. 2021) .......................... 4, 13, 17, 42-43, 46, 48

*Cutrone v. Mortg. Elec. Registration Sys., Inc.*,
  749 F.3d 137 (2d Cir. 2014) ................................................... 25, 36, 40

*Dahl v. R.J. Reynolds Tobacco Co.*,
  478 F.3d 965 (8th Cir. 2007) .............................................................. 21

*Dalton v. Walgreen Co.*,
  721 F.3d 492 (8th Cir. 2013) .............................................................. 28

*Dietrich v. Boeing Co.*,
14 F.4th 1089 (9th Cir. 2021) ............................................................4, 23, 24, 36

*Durham v. Lockheed Martin Corp.*,
445 F.3d 1247 (9th Cir. 2006) ............................................................26

*Gibson v. Clean Harbors Envtl. Servs., Inc.*,
840 F.3d 515 (8th Cir. 2016) ....................2-4, 8, 15-17, 19-25, 27, 30-35, 37-40

*Graiser v. Visionworks of Am., Inc.*,
819 F.3d 277 (6th Cir. 2016) ............................................................21, 24, 27

*Graves v. 3M Co.*,
17 F.4th 764 (8th Cir. 2021) ............................................................6

*Hawai'i v. CaremarkPCS Health, LLC*,
2024 WL 1907396 (D. Haw. May 1, 2024)............................................42, 46, 48

*Hunter v. Page County, Iowa*,
102 F.4th 853 (8th Cir. 2024) ............................................................34, 36

*In re Nat'l Prescription Opiate Litig. (Frederick County)*,
2023 WL 166006 (N.D. Ohio Jan. 12, 2023) ........................5, 13, 18, 43, 46, 48

*In re Willis*,
228 F.3d 896 (8th Cir. 2000) ............................................ 1, 4, 8, 16, 20, 23, 30

*Jacks v. Meridian Res. Co., LLC*,
701 F.3d 1224 (8th Cir. 2012) ............................................ 4, 6-7, 41

*Jordan v. Nationstar Mortg. LLC*,
781 F.3d 1178 (9th Cir. 2015) ............................................................27

*Knudson v. Sys. Painters, Inc.*,
634 F.3d 968 (8th Cir. 2011) ............................................................18

*Kuxhausen v. BMW Fin. Servs. NA LLC*,
707 F.3d 1136 (9th Cir. 2013) ............................................................24, 40

*Lovern v. Gen. Motors Corp.*,
121 F.3d 160 (4th Cir. 1997) ............................................................38

*Minnesota v. Am. Petroleum Inst. (API)*,
  63 F.4th 703 (8th Cir. 2023) .......................... 4, 6-7, 18, 21, 40, 41-42, 44, 46-47

*Mumfrey v. CVS Pharmacy, Inc.*,
  719 F.3d 392 (5th Cir. 2013) .......................................................25, 40

*O'Bryan v. Chandler*,
  496 F.2d 403 (10th Cir. 1974) ................................................................28

*Ohio ex rel. Yost v. Ascent Health Servs., LLC*,
  2024 WL 23187 (S.D. Ohio Jan. 2, 2024) .........................................47

*Par. of Plaquemines v. Chevron USA, Inc.*,
  7 F.4th 362 (5th Cir. 2021) ......................................................4, 22, 27

*Paros Properties LLC v. Colo. Cas. Ins. Co.*,
  835 F.3d 1264 (10th Cir. 2016) ...........................................................37

*Romulus v. CVS Pharmacy, Inc.*,
  770 F.3d 67 (1st Cir. 2014)...........................................................22, 40

*Rutledge v. Pharm. Care Mgmt. Ass'n*,
  592 U.S. 80 (2020)...................................................................................9

*Schubert v. Auto Owners Ins. Co.*,
  649 F.3d 817 (8th Cir. 2011) ...............................................................34

*S.W.S. Erectors, Inc. v. Infax, Inc.*,
  72 F.3d 489 (5th Cir. 1996) ..................................................................28

*Walker v. Trailer Transit, Inc.*,
  727 F.3d 819 (7th Cir. 2013) ...................................22, 24, 25, 35, 38

*Watson v. Philip Morris Cos., Inc.*,
  551 U.S. 142 (2007)..................................................................................6

*Westchester County v. Mylan Pharms., Inc.*,
  2024 WL 3043121 (S.D.N.Y. June 18, 2024) ...................................47

## **Statutes**

28 U.S.C. § 1331 ...........................................................................10

28 U.S.C. § 1441(a) ..................................................................10, 38

28 U.S.C. § 1442(a) ....................... 1, 2, 3, 4, 5, 6, 7, 13, 40, 41

28 U.S.C. § 1446(a) ...........................................................................40

28 U.S.C. § 1446(b) ...............................................................*passim*

28 U.S.C. § 1447(d) .............................................................................4

28 U.S.C. § 1453(b) ....................... 10, 15, 18, 21, 22, 23, 26, 27, 28, 32

**INTRODUCTION**

Express Scripts and OptumRx administer prescription-drug benefits for both government and private clients, including federal agencies such as the Department of Defense and the Veterans Health Administration. When the County sued the PBMs and other defendants in Missouri state court for allegedly contributing to a public nuisance arising from prescription opioid abuse, the County did not explicitly indicate that it would seek to impose liability related to the PBMs' work for those federal agencies. The first time the County unambiguously disclosed that the PBMs' work for federal agencies would form part of its liability theory was in November 2023, when the County served expert liability reports that expressly relied on the PBMs' processing of benefits claims for federal health plans. The PBMs then promptly removed the case to federal court under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), within the 30 days provided by the general removal procedure statute, 28 U.S.C. § 1446(b)(3).

That removal was permissible under the plain language of both statutes and this Court's precedent. The removal was timely under Section 1446(b)(3) because the County's initial pleading did not "explicitly disclose[]" a basis for federal officer removal, *In re Willis*, 228 F.3d 896, 897 (8th Cir. 2000) (per curiam), and the 2023 expert liability reports provided the first "unequivocal statement" from which the PBMs could "unambiguously" determine that federal-officer removal was available,

1

*Gibson v. Clean Harbors Envtl. Servs., Inc.*, 840 F.3d 515, 520 (8th Cir. 2016). And the removal was substantively proper because the County seeks to hold the PBMs liable "for or relating to" their work on behalf of federal officers, 28 U.S.C. § 1442(a)(1)—namely their processing of prescription claims for federal agencies, which the County's 2023 expert reports expressly specified as a basis for liability.

While recognizing that the PBMs' removal was objectively reasonable, the district court granted the County's motion to remand for two alternative reasons, both of which reflect legal errors that this Court should reverse on de novo review.

First, the district court incorrectly held that the PBMs' removal was untimely. The court suggested that an initial removal by other defendants on other grounds called into question the timeliness of the PBMs' present removal. But that initial removal does not foreclose the present removal for multiple reasons: it was not on federal officer grounds, it was not effective, and it did not result in the forfeiture of any removal arguments by the PBMs. The court's principal basis for finding the present removal untimely was its conclusion that the PBMs could have removed the suit in 2022 when the County produced—then immediately retracted and disavowed—discovery relying on the PBMs' processing of prescription claims for federal agencies. The flaw in the court's reasoning is that it failed to apply this Court's precedent providing that only an "unequivocal" statement that "unambiguously" furnishes a basis for removal triggers Section 1446(b)(3)'s 30-day

removal clock. *Gibson*, 840 F.3d at 520. Under that standard, the County's 2022 production did not start the 30-day removal clock because discovery that the County *retracted* and *disavowed* could not "*unambiguously*" provide an "*unequivocal*" basis for removal. *Id.* (emphases added).

Second, the district court incorrectly concluded (in a two-sentence footnote) that the PBMs had not satisfied the substantive requirements for federal officer removal. The court's only basis for that holding was that the County had disclaimed reliance on the PBMs' work for federal agencies. Even if the County had adhered to that disclaimer, it would be unenforceable because neither the legal elements of the County's public-nuisance claim nor its factual allegations against PBMs are susceptible to such artificial division. But the Court need not reach that issue here, because the district court's holding can be reversed on the straightforward basis that the County revoked its disclaimer of reliance on the PBMs' work for federal-agency clients when it produced—and stood by—expert liability reports relying on the PBMs' work for federal agencies. By its own admission, the County seeks to hold the PBMs liable "for or relating to" their work on behalf of federal officers. 28 U.S.C. § 1442(a)(1). That justifies removal.

## JURISDICTIONAL STATEMENT

The district court had subject-matter jurisdiction under 28 U.S.C. § 1442(a)(1) because the PBMs, as "person[s] acting under" an "officer … of the United States,"

removed this suit "for or relating to … act[s] under color of such office" to "the district court … for the district and division embracing the place wherein it is pending." This Court has jurisdiction under 28 U.S.C. § 1447(d) because the PBMs appealed from an "order remanding [the] case to the State court from which it was removed pursuant to [28 U.S.C.] section 1442." The district court granted the motion to remand on March 8, 2024. App. 668; R. Doc. 58 at 12; Add. 12. The PBMs timely filed their notice of appeal on March 13, 2024. App. 669-71; R. Doc. 59 at 1-3.

## STATEMENT OF ISSUES

1. Whether the district court erred by finding the PBMs' removal untimely even though they removed the suit within 30 days of the County's first express and unequivocal statement that it sought to impose liability based on the PBMs' work for federal agencies. *See* 28 U.S.C. § 1446(b)(3); *Gibson*, 840 F.3d 515; *Willis*, 228 F.3d 896; *see also Dietrich v. Boeing Co.*, 14 F.4th 1089 (9th Cir. 2021); *Par. of Plaquemines v. Chevron USA, Inc.*, 7 F.4th 362 (5th Cir. 2021).

2. Whether the district court erred by holding that the PBMs failed to meet the substantive requirements for federal officer removal even though the County expressly seeks to impose liability related to the PBMs' work for federal agencies. *See* 28 U.S.C. § 1442(a)(1); *Minnesota v. Am. Petroleum Inst. (API)*, 63 F.4th 703 (8th Cir. 2023); *Jacks v. Meridian Res. Co., LLC*, 701 F.3d 1224 (8th Cir. 2012); *see also County Bd. of Arlington County v. Express Scripts Pharmacy, Inc.*, 996 F.3d

243 (4th Cir. 2021); *In re Nat'l Prescription Opiate Litig. (Frederick County)*, 2023 WL 166006 (N.D. Ohio Jan. 12, 2023).

## STATUTORY PROVISIONS INVOLVED

The federal officer removal statute, 28 U.S.C. § 1442(a)(1), provides as follows:

> A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending: … The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

The pertinent timing provision of the removal procedure statute, 28 U.S.C. § 1446(b)(3), provides as follows:

> [I]f the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

## STATEMENT OF THE CASE

This case presents questions about the proper application of the substantive provisions of the federal officer removal statute, 28 U.S.C. § 1442(a)(1), and the timing provisions of the removal procedure statute, 28 U.S.C. § 1446(b)(3), to the PBMs' 2023 removal of the County's suit seeking to impose liability related to the

PBMs' administration of prescription-drug benefits for public and private clients—including federal agencies.

## A.     Legal Background

**1.**     "Congress enacted the original federal officer removal statute following the War of 1812 and a series of similar statutes thereafter." *Graves v. 3M Co.*, 17 F.4th 764, 770 (8th Cir. 2021). The "basic purpose" of the statute is "'to protect the Federal Government from the interference with its operations that would ensue'" if federal officers and agents could be subject to trial and liability in hostile state courts based on actions "'within the scope of their authority.'" *API*, 63 F.4th at 714 (quoting *Watson v. Philip Morris Cos., Inc.,* 551 U.S. 142, 150 (2007)).

The federal officer removal statute has never been limited to federal officials alone; it extends as well to "private parties who lawfully assist federal officers in the performance of their official duties." *API*, 63 F.4th at 714 (cleaned up); *see, e.g., Jacks*, 701 F.3d at 1233-34 (holding that private carriers administering health-insurance benefits for federal agencies were covered by the statute). In addition, given its significance to core federal interests, "the Supreme Court 'has made clear that the statute must be "liberally construed."'" *Jacks*, 701 F.3d at 1230 (quoting *Watson*, 551 U.S. at 147). In particular, the federal officer removal statute—unlike most other removal statutes—is "not constrained by the well-pleaded complaint rule." *API*, 63 F.4th at 714. Thus, even a complaint containing claims that arise only

under state law can be removed to federal court if the provisions of the federal officer removal statute are satisfied. *See Jacks*, 701 F.3d at 1230.

The version of the federal officer removal statute applicable to this case includes amendments enacted by Congress in 2011. As relevant here, the statute permits "any person acting under" a federal officer to remove a suit brought "for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1). The "or relating to" language was added by Congress in the Removal Clarification Act of 2011, Pub. L. No. 112-51 § 2(b)(1)(A), 125 Stat. 545, 545, which was "intended to broaden the universe of acts that enable Federal officers to remove to Federal Court," *API*, 63 F.4th at 715 (citation omitted). Under the current statute, "a private defendant" seeking removal "must establish" four elements: "(1) it acted under the direction of a federal officer, (2) there is a connection between the claims and the official authority, (3) the defendant has a colorable federal defense to the plaintiffs' claims, and (4) the defendant is a 'person,' within the meaning of the statute." *Id.*

**2.** The procedural requirements for removal under the federal officer removal statute, like those for removal under most other statutes, are specified in 28 U.S.C. § 1446(b). *BP plc v. Mayor & City Council of Baltimore*, 141 S. Ct. 1532, 1538 (2021). Section 1446(b) sets forth different procedural requirements depending on when a case becomes removable. Section 1446(b)(1), which applies to the removal of an "initial pleading," requires a notice of removal to be filed "within 30

days after the receipt by the defendant … of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b)(1). Section 1446(b)(1) is triggered by "receipt of the initial complaint only when the complaint *explicitly discloses*" the basis for removal. *Willis*, 228 F.3d at 897 (emphasis added).

Section 1446(b)(3) applies when "the initial pleading is not removable." 28 U.S.C. § 1446(b)(3). It requires a notice of removal to be filed "within thirty days after receipt by the defendant … of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." *Id.* Section 1446(b)(3) is triggered only by an "amended pleading, motion, order or other paper" that "set[s] forth a sufficiently detailed and *unequivocal* statement from which the defendant may *unambiguously* ascertain that the … jurisdictional requirements have been satisfied." *Gibson*, 840 F.3d at 520 (emphasis added) (citation omitted).

### B. Factual and Procedural Background

1. PBMs contract with clients to administer prescription-drug benefits and process insurance claims for prescription medications. App. 644; R. Doc. 52 at 1; Add. 23; *see Rutledge v. Pharm. Care Mgmt. Ass'n*, 592 U.S. 80, 83-84 (2020). Express Scripts and OptumRx contract with private entities (*e.g.*, employer-sponsored health plans) as well as government agencies. As particularly relevant

8

here, Express Scripts provides PBM services to the U.S. Department of Defense (**DoD**) health care program known as TRICARE, which offers plans covering active-duty service members. App. 16; R. Doc. 1 at 5. Express Scripts serves TRICARE members across the country, including in Jefferson County, subject to specific requirements and direction from DoD. App. 644-46; R. Doc. 52 at 1-3; Add. 23-25. Express Scripts also provides services to health plans participating in the Federal Employees Health Benefits Program (**FEHBP**), which is administered and overseen by the U.S. Office of Personnel Management (**OPM**). App. 647-48; R. Doc. 52 at 4-5; Add. 26-27. Express Scripts serves current and retired federal employees across the country, including in Jefferson County, subject to specific requirements and direction from OPM. *Id.* OptumRx similarly contracts with the Veterans Health Administration (**VHA**) to provide services to veterans across the country, including in Jefferson County, subject to specific requirements and direction from VHA. App. 16; R. Doc. 1 at 5.

**2.** In January 2019, the County filed its initial pleading in Missouri state court against the PBMs and numerous other defendants, including opioid manufacturers, distributors, and retail pharmacies. *Jefferson County, et al. v. Williams, et al.*, Pet. (22nd Jud. Cir., St. Louis City, 1922-CC00203). The pleading included a claim under Missouri public nuisance law and sought to recoup the "public costs" that the County claims it has "expended fighting the opioid epidemic."

App. 49; R. Doc. 1-3 at 1.[1] The pleading alleged that the PBMs contributed to a public nuisance by administering benefits and processing claims for prescription opioids but did not make any reference to PBMs' work on behalf of federal clients such as DoD or VHA. App. 280-283; R. Doc. 1-3 at 232-35.

Two days after the initial pleading was filed (and before the PBMs had been served), then-Defendant CVS Pharmacy, Inc. removed the case under the removal provision of the Class Action Fairness Act (CAFA), 28 U.S.C. § 1453(b), and the general federal removal statute, 28 U.S.C. § 1441(a), which permits removal of any case that could have been filed in federal court (*e.g.*, a suit arising under federal law, 28 U.S.C. § 1331). App. 17; R. Doc. 1 at 6. The case was then transferred to the federal opioids multi-district litigation (**MDL**), which has been pending before Judge Dan Aaron Polster in the Northern District of Ohio since 2017. *Id.*

On July 11, 2019, Judge Polster issued a scheduling order stating that two Missouri state court judges had contacted him to request the remand of "a small number of cases"—including this one—"brought by cities or counties … that were removed from their jurisdictions and landed in the MDL." *Id.* The PBMs and other defendants objected to the requested remand "because it would bypass procedure,

---

[1]   For simplicity, this brief cites the operative Second Amended Petition (**SAP**), which is reproduced in the joint appendix. The SAP made substantive changes only to the fraud claim, which is not discussed here. App. 48; R. Doc. 1-3 at 1 n.1.

conflict with orders" previously entered by the court, and "cause inefficiencies." *Id.* (Dkt. 1931). On July 24, 2019, Judge Polster severed this case and one other from the MDL and remanded them both to Missouri state court after stating that the claim of removal jurisdiction was "very tenuous." *Id.* Upon remand, the two counties' cases proceeded in state court as separate lawsuits.

3.      During post-remand discovery in state court, the PBMs served requests asking the County to identify the specific prescriptions that the County contends were improper and caused the County's alleged injuries. App. 19; R. Doc. 1 at 8; Add. 13. In response, the County provided a set of "red flag" criteria—alleged indicators that the County contends could suggest problematic prescriptions—and applied those criteria to the prescription data produced in discovery (the "**Red Flag Analysis**"). App. 20; R. Doc. 1 at 9; Add. 14. The Red Flag Analysis purports to identify which prescriptions the County is relying on to prove the PBMs are liable for creating an oversupply of opioids. The County served seven different "interim" Red Flag Analyses, each purportedly superseding the previous version. *Id.*

In its sixth iteration of Red Flag Analysis, served on February 3, 2022, the County identified for the first time 9,326 prescription claims that Express Scripts processed on behalf of DoD for TRICARE. *Id.* The next day, the County withdrew that analysis due to an unspecified "error." *Id.* Ten days later, the County served a revised Red Flag Analysis that omitted the TRICARE claims. *Id.*

Given the County's equivocation, the PBMs informed the County that they intended to remove the action to federal court under the federal officer removal statute unless the County confirmed in writing that it was not seeking to prove liability by challenging "claims adjudicated or processed for a plan controlled or sponsored by a federal governmental department or entity." App. 21; R. Doc. 1 at 10. The County responded that "it is not challenging federal prescription PBM claims … in the instant state court proceeding." *Id.*

On March 16, 2022, the County memorialized its position by entering into a Joint Stipulation and Proposed Order Regarding Federal Plans. That stipulation provided that the County "will not now or at any time in the future in this state court litigation seek to establish liability against any of the PBM Defendants in connection with any Federal Plan." *Id.* The County further stipulated that it "will not now or at any time in the future in this state court litigation take the position or pursue any argument suggesting that the PBM Defendants' conduct relating to prescription claims for Federal Plans caused an oversupply of prescription opioids in Jefferson County, contributed to the theories of liability against the PBMs upon which Jefferson County bases its lawsuit, or caused or contributed to the harms for which Jefferson County seeks recovery." App. 22; R. Doc. 1 at 11.

In July 2022, the County entered into a second stipulation with OptumRx and its affiliates, again affirming that it would not use prescriptions filled under federal

health plans to prove its claims. App. 22-23; R. Doc. 1 at 11-12. Both stipulations provide that "nothing in this stipulation limits [the PBMs'] . . . rights in this litigation in any way." App. 309; R. Doc. 2-16 at 4; Add. 22; App. 320; R. Doc. 2-17 at 4.

**4.**     For the next year and a half, the PBMs litigated this case in good-faith reliance on the County's representations. App. 23; R. Doc. 1 at 12. On November 15, 2023, the County served three liability expert reports that, among other things, relied on a new "red flag" analysis of opioid prescription claims that includes claims for TRICARE and other of the PBMs' federal-agency clients. App. 23-24; R. Doc. 1 at 12-13. In other words, the prescriptions carved out of its February 2022 Red Flag Analysis are now a central feature of the County's liability theory. *Id.*

The PBMs accordingly removed the case to the district court under the federal officer removal statute, 28 U.S.C. § 1442(a)(1), noting that other courts have sustained such removals in parallel opioid litigation, App. 13-14; R. Doc. 1 at 2-3 (citing *Arlington County*, 996 F.3d at 248; *Frederick County*, 2023 WL 166006, at *3-8). In response, the County did not assert—as it had in 2022—that its inclusion of federal prescriptions was an "error." App. 19; R. Doc. 1 at 8; Add. 8; App. 569, 573-74; R. Doc. 37 at 6, 10-11. Instead, the County's counsel sent an email to the PBMs explaining that the County is now relying on data of prescription claims the PBMs processed for TRICARE, VHA, and other federal plans as "evidence" of the PBMs' "overall knowledge as to the choices it was making with regard to" PBM

services, for which the County seeks to hold the PBMs liable. App. 626; R. Doc. 51 at 10. The County nevertheless moved for remand on the ground that federal officer removal was unavailable. App. 652; R. Doc. 53 at 4.

### C. The Decision Under Review

On March 8, 2024, the district court (Schelp, J.) granted the County's motion to remand but declined to execute the remand for seven days to allow the PBMs an opportunity to appeal. App. 668; R. Doc. 58 at 12; Add. 12.

The court first held that the PBMs' removal was untimely. The court stated that a case is removable under Section 1446(b)(3) only "if the case stated by the initial pleading is not removable," and the court observed that the initial pleading in this case had been removed on CAFA and federal question grounds. App. 661; R. Doc. 58 at 5; Add. 5. The court noted that the PBMs had joined the "collective objection" to the request "to sever and remand Jefferson County's claims to state court," which the court stated "implicitly communicated [the PBMs'] belief that the initial pleading was, in fact, removable." App. 662; R. Doc. 58 at 6; Add. 6. The court then noted that Judge Polster had "severed and remanded the action, and in doing so, noted the 'claim of federal jurisdiction' was 'very tenuous' but did not make a jurisdictional finding." *Id.* The court further stated that the PBMs "did not include any analysis within [their] Notice of Removal or … Memorandum in

Opposition to the Motion to Remand showing that the initial pleading was not removable." *Id.*

The district court continued by stating that, "even if the initial pleading was not removable, the Court agrees with [the County] that the case became removable, if ever, on February 14, 2022." *Id*. The court concluded that the PBMs "were entitled to remove the case to federal court" at that time, and "[i]t is of no moment that the County responded that it was 'not challenging federal prescription PBM claims'" or "entered a joint stipulation to that effect." App. 663; R. Doc. 58 at 7; Add. 7. The court did not address this Court's holding in *Gibson* that Section 1446(b)(3) is triggered only by an "unequivocal statement from which the defendant may unambiguously" determine that removal was available, 840 F.3d at 520, even though the PBMs cited that holding repeatedly in their opposition to the remand motion. App. 622, 632-33; R. Doc. 51 at 6, 16, 17.

In the alternative, the district court stated in a two-sentence footnote that, even if the PBMs' removal was timely, the court was "unpersuaded that a causal connection is present to allow removal under 28 U.S.C. § 1442." App. 667; R. Doc. 58 at 11; Add. 11. "[B]ecause [the County] disclaimed all challenges related to federal prescription claims in the Stipulations entered between the parties," the court stated, "the charged conduct only relates to non-federal prescription claims." *Id.*

Despite ordering remand, the district court found the PBMs' removal "objectively … reasonable" and denied the County's request for an award of fees and costs. App. 667-68; R. Doc. 58 at 11-12; Add. 11-12.

## SUMMARY OF ARGUMENT

The PBMs timely and properly removed this suit. The district court's contrary holdings misapply this Court's precedent on removal timing and incorrectly deny the PBMs a federal forum to defend against claims that the County has acknowledged relate to the PBMs' work for federal agencies—a paradigmatic ground for federal officer removal.

I.     The PBMs' 2023 federal officer removal was timely under the plain language of the removal procedure statute and this Court's precedent. The County's "initial pleading" in 2019 did not "explicitly disclose[]" a basis for federal officer removal. *Willis*, 228 F.3d at 897 & n.1; 28 U.S.C. § 1446(b)(3). And the County provided no "amended pleading, motion, order or other paper" before November 2023 from which the PBMs could "ascertain[] that the case is one which is or has become removable," 28 U.S.C. § 1446(b)(3), because the County made no "unequivocal statement from which" the PBMs could "unambiguously" determine that federal officer removal was available, *Gibson*, 840 F.3d at 520.

The district court avoided that straightforward conclusion by suggesting that the initial pleading was removable and the PBMs should have removed in 2022. But

the initial pleading did not explicitly disclose a basis for *federal officer* removal, which is the operative question for purposes of Section 1446(b)(3). And, in any event, the 2019 removal on CAFA and federal question grounds resulted in remand to state court—the opposite of removability.

Nor does the prospect that the PBMs arguably *could have* removed on federal officer grounds in 2022 render their 2023 removal untimely. The district court squarely contradicted this Court's precedent by failing to inquire whether the 2022 Red Flag Analysis contained an "unequivocal statement" that "unambiguously" permitted federal officer removal, as is required to trigger the 30-day clock in Section 1446(b)(3). *Gibson*, 840 F.3d at 520. Under the proper standard, the 30-day clock was not triggered by the 2022 Red Flag Analysis; after all, the County immediately revoked the relevant portion of the discovery and then disclaimed reliance on federal prescription claims in a stipulation that the district court found enforceable. Whatever else might be said about that approach, it hardly provides an *unequivocal* basis for federal officer removal.

**II.**    The PBMs' 2023 removal was also substantively proper. Both the Supreme Court and this Court have emphasized the breadth of the federal officer removal statute and the need for liberal construction, and the statute's scope has further expanded after the 2011 amendments. The only federal court of appeals to address the issue has held that a PBM's administration of prescription-drug benefits

for a federal agency suffices to remove a public-nuisance claim like the one the County asserts here, *Arlington County*, 996 F.3d at 248, and the district judge overseeing the federal opioid MDL has reached the same conclusion, *Frederick County*, 2023 WL 166006, at \*3-8.

Neither the County nor the district court expressly disagreed with those authorities. The court instead accepted the County's argument that the result should differ here because the County purportedly disclaimed reliance on the PBMs' conduct related to their work for federal agencies. That argument is flawed for multiple reasons, including that a public nuisance claim—which by definition requires interference with the rights of the community as a whole—is not susceptible to such artificial division. But even if such an effective disclaimer were theoretically possible, the County has undermined its disclaimer in this case by submitting—and standing behind—expert liability reports that expressly rely on the PBMs' processing of prescription-drug claims for federal agency clients. By the County's own account of the evidence, therefore, the PBMs' work for federal agencies is at issue. Federal officer removal is accordingly proper.

## ARGUMENT

## STANDARD OF REVIEW

This Court reviews a "district court's decision to remand *de novo*." *API*, 63 F.4th at 709; *see Buljic v. Tyson Foods, Inc.*, 22 F.4th 730, 738 (8th Cir. 2021)

(same); *Knudson v. Sys. Painters, Inc.*, 634 F.3d 968, 973 (8th Cir. 2011) (specifically reviewing district court's decision on timeliness of removal de novo).

## I. THE PBMs' 2023 FEDERAL OFFICER REMOVAL WAS TIMELY

Under the federal officer and removal procedure statutes, a complaint that does not explicitly disclose a basis for federal officer removal may be removed by a defendant within 30 days of receipt of a paper that unambiguously provides such a basis. 28 U.S.C. §§ 1442(a)(1), 1446(b)(3); *Gibson* 840 F.3d at 520. Here, the PBMs received no such paper before November 2023. The PBMs' removal in December 2023 was accordingly timely. The district court's contrary conclusion rests on a misapplication of the removal procedure statute and this Court's precedent.

### A. When An Initial Pleading Does Not Explicitly Disclose Grounds for Federal Officer Removal, Removal Is Timely Within 30 Days Of Service Of A Paper Unambiguously Providing Grounds For Such Removal

"To remove a case" under the federal officer removal statute—or another civil removal statute—"a defendant must comply with" the procedures specified in 28 U.S.C. § 1446. *BP*, 141 S. Ct. at 1538. As relevant here, Section 1446(b) includes two alternative timing provisions that apply depending on when the basis for removal is disclosed.

Section 1446(b)(1) permits removal "within 30 days after the receipt by the defendant … of a copy of the initial pleading setting forth the claim for relief." 28 U.S.C. § 1446(b)(1). This Court has explained that Section 1446(b)(1)'s "thirty-day

time limit" "begins running upon receipt of the initial complaint only when the complaint *explicitly discloses*" the basis for removal. *Willis*, 228 F.3d at 897 (emphasis added). That rule "promotes certainty and judicial efficiency by not requiring courts to inquire into what a particular defendant may or may not subjectively know" about the grounds for removal in an ambiguous complaint. *Id.* (citing *Chapman v. Powermatic, Inc.,* 969 F.2d 160, 163 (5th Cir. 1992)). It also removes the incentive for defendants to engage in protective removals that may prove unnecessary once details of the claim are clarified. *Chapman*, 969 F.3d at 163.

Section 1446(b)(3) applies when "the case stated by the initial pleading is not removable." 28 U.S.C. § 1446(b)(3). In that circumstance, removal is timely "within thirty days after receipt by the defendant … of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable" on the specified basis. *Id.* In keeping with the ordinary meaning of the statutory term "ascertain[]," *id.*, this Court explained in *Gibson* that "the thirty-day removal period set forth in § 1446(b)(3) does not begin to run until the defendant receives from the plaintiff an amended pleading, motion, order, or other paper" setting "forth a *sufficiently detailed and unequivocal* statement from which the defendant may *unambiguously* ascertain that the" removal requirements "have been satisfied." 840 F.3d at 519-20 (emphasis added). That "'bright-line approach' … discourages the use of indeterminate allegations by

plaintiffs in their filings and other papers, and it eliminates the incentive for defendants to file protective removals." *Id.* at 520.

In *Gibson*, the disputed removal was based on CAFA rather than the federal officer removal statute. *Id.* at 520. But the timing provisions in Section 1446(b) apply to civil removals on any statutory ground. *See BP*, 141 S. Ct. at 1538; 28 U.S.C. § 1453(b) (permitting removal under CAFA "in accordance with section 1446"). This Court in *Gibson* did not suggest that its holding that Section 1446(b)(3)'s 30-day clock begins to run only when "the defendant can unambiguously ascertain" that removal is available was in any way specific to CAFA removal grounds. *Gibson*, 840 F.3d at 519 (quoting *Graiser v. Visionworks of Am., Inc.*, 819 F.3d 277, 285 (6th Cir. 2016)). To the contrary, in interpreting other aspects of Section 1446(b)(3), this Court in *Gibson* relied on precedents that involved removals under the federal officer removal statute. *Id.* at 521 (citing *Dahl v. R.J. Reynolds Tobacco Co.*, 478 F.3d 965, 969 (8th Cir. 2007)). And as a matter of congressional policy and precedent, federal officer removal should be at least as available as removal under other statutory bases, given that federal officer removal—unlike other forms of removal—"is liberally construed and not constrained by the well-pleaded complaint rule." *API*, 63 F.4th at 714; *see also Buljic*, 22 F.4th at 738 (same).

Other circuits that have considered the application of Section 1446(b)(3) to federal officer removal have unanimously agreed that the 30-day clock begins to run

only when the grounds for federal officer removal are "unequivocally clear and certain." *Plaquemines*, 7 F.4th at 372 (quoting *Bosky v. Kroger Texas, LP*, 288 F.3d 208, 211 (5th Cir. 2002)). The Fifth Circuit reached that result by adopting the same interpretation of Section 1446(b)(3) that it had applied to removals based on other statutory grounds. *Id.*; *see Bosky*, 288 F.3d at 211 (explaining in a diversity jurisdiction removal dispute that Section 1446(b)(3)'s 30-day clock begins to run only when the "facts supporting removability [are] stated unequivocally").

The Ninth Circuit adopted the same "unequivocally clear and certain" standard for triggering Section 1446(b)(3)'s clock for federal officer removals in *Dietrich*, 14 F.4th at 1093-95. There, the Ninth Circuit construed Section 1446(b)(3) in reliance on some of the same cases this Court cited when it construed the same statutory provision in *Gibson*. *Id.* at 1093-94 (citing *Romulus v. CVS Pharmacy, Inc.*, 770 F.3d 67, 75 (1st Cir. 2014), and *Walker v. Trailer Transit, Inc.*, 727 F.3d 819, 825 (7th Cir. 2013)); *see Gibson*, 840 F.3d at 520. The Ninth Circuit's construction of Section 1446(b)(3) in *Dietrich* likewise relied on the same policy objectives of promoting judicial economy and preventing protective removals that this Court invoked in *Gibson*. *See Dietrich*, 14 F.4th at 1094; *Gibson*, 840 F.3d at 520-21.

In short, what is true of CAFA removal is equally true of federal officer removal: if an initial pleading does not explicitly disclose a basis for removal, the case can be removed within 30 days of the defendant's receipt of the first "amended

pleading, motion, order or other paper" that provides an "unequivocal" basis for such removal. *Gibson*, 840 F.3d at 520.

**B.    The Initial Pleading Did Not Explicitly Disclose Grounds for Federal Officer Removal And Its Prior Removal And Remand On Other Grounds Do Not Bear On The Timeliness Of The Present Removal**

The threshold requirement for a timely removal is satisfied here because "the case stated by the initial pleading" did not explicitly disclose the grounds for federal officer removal. 28 U.S.C. § 1446(b)(3); *Willis*, 228 F.3d at 897 & n.1. The district court suggested—although it did not clearly hold—that the ineffective removal of the complaint on *other* grounds might affect the timeliness of the present removal under the federal officer removal statute. App. 661-62; R. Doc. 58 at 5-6; Add. 5-6. To the extent the court relied on such a basis to find the present removal untimely, it was mistaken for multiple reasons.

**1.    The 2019 pleading did not explicitly disclose a basis for federal officer removal**

As explained above, this Court has held that an initial pleading is "removable" for purposes of Section 1446(b) only if "the complaint explicitly discloses" the basis for removal. *Willis*, 228 F.3d at 897. Here, there is no dispute that the County's 2019 pleading did not "explicitly disclose[]" a basis for federal officer removal. *Id.* The pleading does not explicitly mention the PBMs' work for federal clients or include any other explicit statement that the County's claims relate to that work. The district

court did not find to the contrary, nor did the County contend in the district court papers that its initial pleading was removable on federal-officer grounds.

To be sure, the fact that the initial pleading did not *explicitly* include a basis for federal officer removal does not mean it could not have been properly removed. But the prospect of such a *discretionary* removal does not start the *mandatory* 30-day removal clock under Section 1446(b). *Gibson*, 840 F.3d at 519 (quoting *Graiser*, 819 F.3d at 285). As numerous courts have explained, "whether a defendant can establish that federal jurisdiction exists and the question of when the thirty-day time period begins are not two sides of the same coin." *Graiser*, 819 F.3d at 285 (quoting *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1141 n.3 (9th Cir. 2013)). Even if the PBMs "*could have* ventured beyond the pleadings to demonstrate removability" of the initial pleading, they were not "*obligated* to do so" to comply with the timing provisions of Section 1446(b). *Kuxhausen*, 707 F.3d at 1141 n.3.

In other words, "the 30-day removal clock" in Section 1446(b)(3)—like that in Section 1446(b)(1)—does not "begin to run the first moment it becomes *possible* for the defendant to remove the case." *Walker*, 727 F.3d at 824 (emphasis added). "No court of appeals has adopted this rule, and for good reason." *Id.* It would "conflate the timeliness question with the factual inquiry into whether the case is substantively appropriate for removal." *Id.*; *see Dietrich*, 14 F.4th at 1094 (reversing a district court for mistakenly equating "facts *sufficient to allow* removal with facts

*sufficient to require removal within thirty days*") (emphases added); *Cutrone v. Mortg. Elec. Registration Sys., Inc.*, 749 F.3d 137, 146 (2d Cir. 2014) ("[E]ven if a defendant *could* remove immediately upon the filing of a complaint because the case satisfies the requirements of federal subject matter jurisdiction, a complaint or other document from the plaintiff that does not explicitly convey the removability of a case does not trigger the removal clocks of 28 U.S.C. §§ 1446(b)(1) and (b)(3)."); *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 400 n.13 (5th Cir. 2013) ("[E]ven if [the defendant] *could* have removed immediately, [the] Original Petition did not start the clock such that [the defendant] was required to remove if it wanted to.").[2]

### 2. CVS's failed 2019 removal on CAFA and federal-question grounds did not trigger the clock for federal-officer removal

Although the district court did not suggest that the initial pleading was removable on federal officer grounds, it observed that the initial pleading "was removed to federal court" on other grounds (CAFA and federal question jurisdiction) before ultimately being remanded. App. 658, 661-62; R. Doc. 58 at 2, 5-6; Add. 2, 5-6 (brackets omitted). To the extent the district court relied on that ineffective removal on other grounds as a reason to find the PBMs' current federal officer removal untimely, the court legally erred for at least two reasons.

---

[2] This Court relied on *Graiser*, *Walker*, *Cutrone*, and *Mumfrey* in construing Section 1446(b) in *Gibson*. 840 F.3d at 519-20.

a. First, Section 1446(b)(3)'s threshold condition that "the initial pleading is not removable" is specific to particular grounds for "removab[ility]." For example, "[w]hen a plaintiff's initial pleading does not state a case that is removable *under CAFA*—which was true [in that case] because each case involves claims by fewer than 100 persons," Section 1446(b)(3)'s threshold condition is satisfied, even if the complaint could have been removable on other grounds. *Atwell v. Bos. Sci. Corp.*, 740 F.3d 1160, 1162 (8th Cir. 2013) (emphasis added).

Although this Court has not had occasion to consider the application of that principle to federal officer removal, the Ninth Circuit has held that "a federal officer defendant's thirty days to remove commence when the plaintiff discloses sufficient facts *for federal officer removal*, even if the officer was previously aware of a different basis for removal." *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006) (emphasis added); *see id.* at 1252 (explaining that the proper way "to interpret 'removable'" in Section 1446(b)(3) "is to look to each ground for removal separately"). That approach "protects the government's right of removal and encourages plaintiffs to disclose the facts underlying their claims early on," while "an opposite result would encourage gamesmanship and defeat the policies underlying sections 1442 and 1446." *Id.* at 1253.

The Fifth Circuit has followed the same approach, framing "the first question in [its] timeliness inquiry" as "whether the [plaintiffs'] petitions affirmatively

revealed on their face any grounds for *federal-officer removal*." *Plaquemines*, 7 F.4th at 368 (emphasis added). And the Sixth Circuit's decision in *Graiser*—which this Court followed in *Gibson*, 840 F.3d at 519-21—expressly adopted the Ninth Circuit's reasoning from the federal officer removal context and applied it in the CAFA removal context: "Federal jurisdiction under CAFA, *like federal jurisdiction over federal officers*, serves different policy purposes than federal jurisdiction over ordinary diversity cases or cases arising under federal-question jurisdiction." *Graiser*, 819 F.3d at 287 (emphasis added). Thus, "once a defendant ascertains that a case is removable under CAFA"—or, here, under the federal officer removal statute—the "defendant may remove the case … within the time constraints of § 1446(b)(1) and (b)(3) … even if the case was originally removable under a different theory of federal jurisdiction." *Id.*; *see Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1184 (9th Cir. 2015) (likewise adopting the same position for CAFA removal as for federal officer removal).

**b.** Second, even if the initial removal of the case on other grounds were relevant to determining whether the initial pleading was "removable" for purposes of Section 1446(b)(3), the answer would be no for an additional reason: The initial removal was ineffective because "the federal judge presiding over the Opioid MDL severed and remanded the action" to state court. App. 662; R. Doc. 58 at 6; Add. 6.

That conclusion follows from both the statutory language and precedent. As a matter of ordinary meaning, it would make little sense to construe the term "removable"—*i.e.*, capable of being removed—to encompass complaints that were remanded to state court, the very destination that removal is designed to avoid. For that reason, courts have consistently held that a failed removal on one basis does not procedurally bar a subsequent removal based on a "different factual basis." *City of Creve Coeur, Mo. v. DirecTV LLC*, 58 F.4th 1013, 1016 (8th Cir. 2023) (quoting *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 493 (5th Cir. 1996)); *see O'Bryan v. Chandler*, 496 F.2d 403, 410 (10th Cir. 1974) (subsequent removal proper where based on "a different set of facts"); *cf. Dalton v. Walgreen Co.*, 721 F.3d 492, 494 n.2 (8th Cir. 2013) (stating that this Court would "affirm the district court's order remanding the case" but "it remains to be see whether this case may become removable in the future due to [defendant's] receipt of discovery responses" or "other documents"). CVS's failed removal of the initial pleading years before the facts supporting the grounds for federal officer removal developed accordingly does not affect whether the present removal is timely.

### 3. The PBMs did not waive or forfeit their right to federal officer removal

The district court separately stated that the PBMs "implicitly communicated [their] belief that the initial pleading was, in fact, removable" by joining a "collective objection to a request seeking to sever and remand" the County's "claims to state

court." App. 662; R. Doc. 58 at 6; Add. 6. The court also stated that the PBMs "did not include any analysis within [their] Notice of Removal" or opposition to the County's remand motion "showing that the initial pleading was not removable." *Id.* It is unclear what significance, if any, the district court attached to those statements, but to the extent the court suggested that the PBMs had waived or forfeited their right to remove the case on federal officer grounds, that position is mistaken.

As an initial matter, the PBMs did not remove the initial pleading (CVS did so before the PBMs had been served), nor did the PBMs take a position on the removability of the initial pleading in the joint objection to severance and remand. *In re: National Prescription Opiate Litigation*, 17-md-02804 (N.D. Ohio July 22, 2019), Dkt. 1931. The objection instead contended that the basis for the severance and remand motion—a request from state court judges to have specified cases returned from federal court—was procedurally improper. *Id.* at 1-2 ("The issue of whether to sever and remand … should not be addressed unless and until th[e MDL] Court lifts the moratorium on remand motions and a motion to remand is properly before this Court and ripe for decision."). The objection also questioned whether the proposed venue, St. Louis City Circuit Court, was the proper remand destination for Jefferson County's suit. *Id.* at 3. Contrary to the district court's suggestion, those contentions do not "communicate"—even "implicitly"—any "belief" about the removability of the initial pleading. App. 662; R. Doc. 58 at 6; Add. 6. And even if

the PBMs had communicated a belief on that issue, it would be irrelevant. In interpreting the removal statutes, this Court has declined "to inquire into what a particular defendant may have subjectively known," *Gibson*, 840 F.3d at 520 (quoting *Willis*, 228 F.3d at 897) (brackets omitted).

The district court also erred in stating that the PBMs "did not include any analysis within [their] Notice of Removal" or opposition to the County's remand motion "showing that the initial pleading was not removable." App. 662; R. Doc. 58 at 6; Add. 6. In fact, both documents made the PBMs' position on that issue clear. In the notice of removal, for example, the PBMs explained that Section 1446(b)(3)'s 30-day clock starts "running *upon receipt of the initial complaint* only when the complaint explicitly discloses" the basis for removal, App. 44; R. Doc. 1 at 33 (quoting *Willis*, 228 F.3d at 897) (emphasis altered), and that, "[i]n this case, the County represented in its opposition to a motion to dismiss" the initial pleading "that it was *not* seeking to recover based on prescription claims associated with federal contracts," thus confirming the absence of any explicit basis for federal officer removal, App. 44-45; R. Doc. 1 at 33-34; *see id.* at 34 ("*Only after receiving the County's liability expert reports on November 15, 2023*, could the PBMs unambiguously ascertain *for the first time* the County's intent … to pursue liability based on the PBMs' work at the behest of the federal government.") (emphases added). Likewise, the PBMs' opposition to the County's motion to remand states:

"*At no point before November 2023* had the PBMs 'receive[d] from the plaintiff' a paper that 'set[s] forth a sufficiently detailed and unequivocal statement from which [they could] unambiguously ascertain' that the case was removable." App. 622; R. Doc. 51 at 6 (quoting *Gibson*, 840 F.3d 519-20) (emphasis added); *see id.* ("Those [November 15, 2023] expert reports constitute 'other papers' from which it could '*first be ascertained*' that the County's case had 'become removable.'") (quoting 28 U.S.C. § 1446(b)(3)) (emphasis added). The PBMs thus left no doubt about their position that Section 1446(b)(3) applied because the "initial pleading" did not explicitly disclose a basis for federal officer removal and the November 2023 expert liability reports constituted an "other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).

In any event, even if the PBMs *had* taken the position that the initial pleading was removable on CAFA or federal question grounds, that would not preclude them from removing the case now on federal officer grounds. *See* Section I.B.2, *supra*. The district court accordingly erred to the extent that it grounded its timeliness holding in any aspect of the handling of the initial pleading.

### C.    The 2022 Red Flag Analysis Did Not Unambiguously Provide Grounds For Federal Officer Removal

The principal basis for the district court's timeliness ruling was that, "even if the initial pleading was not removable" for purposes of Section 1446(b)(3), the PBMs' present removal was untimely because Section 1446(b)(3)'s 30-day clock

was triggered by—and ran out following—the PBMs' receipt in discovery of the County's 2022 Red Flag Analysis. App. 662; R. Doc. 58 at 6; Add. 6; *see* App. 662-64; R. Doc. 58 at 6-8; Add. 6-8. The error in that reasoning is straightforward: The court applied the wrong legal standard. Rather than asking whether the 2022 discovery provided an "*unequivocal* statement from which" the PBMs could "*unambiguously* ascertain that" federal officer removal was available, *Gibson*, 840 F.3d at 520 (emphasis added), the court concluded that Section 1446(b)(3)'s 30-day clock was triggered simply because the PBMs "were entitled to remove the case to federal court" based on the portion of the 2022 discovery identifying prescriptions processed by the PBMs for federal-agency clients. App. 663; R. Doc. 58 at 7; Add. 7. By asking the wrong question, the district court reached the wrong answer. Under a proper reading of Section 1446(b)(3), the 2022 discovery referencing prescriptions processed for federal clients—which the County *revoked* and then *repudiated* in a stipulation the district court found effective—fell far short of the "unequivocal statement" required to trigger the 30-day removal clock. *Gibson*, 840 F.3d at 520.

> 1. **The County's disavowal of reliance on claims processed by the PBMs for federal clients made the 2022 Red Flag Analysis an *equivocal* basis for federal officer removal**

As explained above, Section 1446(b)'s 30-day clock for removability is triggered only by an amended complaint or other paper containing an "unequivocal statement from which" the defendant can "unambiguously ascertain that the" federal

officer removal requirements "have been satisfied," *Gibson*, 840 F.3d at 520. The 2022 Red Flag Analysis submitted—but then promptly withdrawn and disclaimed—by the County does not come close to meeting that standard.

To recap the key developments, on February 3, 2022, the County sent the PBMs its sixth Red Flag Analysis, which for the first time incorporated prescription claims Express Scripts had processed for TRICARE. App. 20; R. Doc. 1 at 9; Add. 14. The next day, the County sent the PBMs a formal notice, letter, *and* email retracting that discovery due to an "error." *Id.* On February 14, 2022, the County served a revised Red Flag Analysis omitting the TRICARE claims. *Id.* The PBMs sought clarification that the County did not intend to hold the PBMs liable for their federal work. App. 21; R. Doc. 1 at 10. The County agreed that it was "not challenging federal prescription PBM claims (including seeking recovery from the PBMs for same) in the instant state court proceeding." *Id*. The parties then entered into a stipulation wherein the County agreed that it would not "seek to establish liability against [the PBMs] in connection with any federal plan." App. 308; R. Doc. 2-16 at 2; Add. 2.

By any reasonable measure, the 2022 Red Flag Analysis did not contain an "*unequivocal* statement from which" the PBMs could "*unambiguously* ascertain that the federal officer jurisdictional requirements had been satisfied." *Gibson*, 840 F.3d at 520 (emphasis added). After all, the County immediately withdrew the portion of

the discovery on which the PBMs would have relied for federal officer removal—the reference to claims processed by the PBMs for federal clients—and then expressly disavowed that it was relying on the PBMs' federal work. App. 24; R. Doc. 1 at 13. If the PBMs had nevertheless removed the case, the district court almost certainly would have considered the County's withdrawal of the discovery and subsequent disclaimer of reliance on the PBMs' processing of claims for federal clients. "It is axiomatic the court's jurisdiction is measured ... at the time of removal." *Hunter v. Page County, Iowa*, 102 F.4th 853, 868 (8th Cir. 2024) (quoting *Schubert v. Auto Owners Ins. Co.*, 649 F.3d 817, 822 (8th Cir. 2011)). In evaluating removal, moreover, this Court has made clear that a defendant must "apply a reasonable amount of intelligence to its reading" of documents submitted by the plaintiff. *Gibson* 840 F.3d at 519 (citation omitted). Here, that would surely include considering the County's express disavowal of reliance on the PBMs' work for federal clients, which at the very least created *ambiguity* about whether federal officer removal was available.

To be sure, the PBMs might have advanced persuasive arguments that the County's disclaimer should be disregarded or treated as ineffective, thereby allowing removal. *See* Section II.B, *infra*. But those arguments, even if successful, would have supported at most a *discretionary* removal, not one that is *mandatory* to avoid expiration of the 30-day clock under Section 1446(b)(3). *See Walker*, 727 F.3d at

824 (explaining that "[n]o court of appeals" has held that Section 1446(b)(3)'s removal clock "begin[s] to run the first moment it becomes *possible* for the defendant to remove the case[.]") (emphasis added); *see* pp. 24-25, *supra* (collecting similar reasoning). Indeed, the district court ultimately concluded in the decision below that the County's disclaimer was *effective*. App. 667; R. Doc. 58 at 11 n.12; Add. 11 n.12. Whatever else might be said about the merits of that determination, it squarely undermines any suggestion that the PBMs had an *unambiguous* or *unequivocal* basis to remove after the County's disclaimer of the 2022 Red Flag Analysis. *See Gibson*, 840 F.3d at 520. The PBMs' receipt of that discovery accordingly did not start the 30-day clock for removal under Section 1446(b)(3). *Id.*

> ### 2. The district court applied the wrong standard in holding that the 2022 Red Flag Analysis started Section 1446(b)(3)'s removal clock

The district court reached a contrary result by applying the wrong legal standard. The court never acknowledged or applied the requirement that a basis for removal must be "unambiguous[]" and "unequivocal" to trigger the 30-day clock in Section 1446(b)(3). *Gibson*, 840 F.3d at 520. The court instead concluded that Section 1446(b)(3)'s clock was triggered simply because the PBMs "were entitled to remove the case to federal court." App. 663; R. Doc. 58 at 7; Add. 7. As demonstrated above, however, every court of appeals that has considered the question has rejected that line of reasoning, reversing district courts that have

employed it. *Walker*, 727 F.3d at 824; *see, e.g.*, *Cutrone*, 749 F.3d at 146 ("[E]ven if a defendant *could* remove … because the case satisfies the requirements of federal subject matter jurisdiction, a complaint or other document from the plaintiff that does not explicitly convey the removability of a case does not trigger the removal clocks of 28 U.S.C. §§ 1446(b)(1) and (b)(3).") (emphasis in original); *Dietrich*, 14 F.4th at 1094 (reversing district court for mistakenly equating "facts *sufficient to allow* removal with facts *sufficient to require removal within thirty days*" under Section 1446(b)(3)) (emphases added). The same result is warranted here.

The district court also seemed to conclude that it had to analyze removability at the precise moment when the County delivered the Red Flag Analysis indicating that it was relying on the PBMs' work for federal clients, even though the County immediately withdrew that discovery and disavowed such reliance. In the court's view, it was "of no moment that the County" formally represented to the PBMs "that it was 'not challenging the federal prescription PBM claims" and "entered a joint stipulation to that effect." App. 663; R. Doc. 58 at 7; Add. 7. But there is no support in the statutory text, this Court's precedents, or the decisions of other circuits for such a blinkered reading. As noted above, removability is analyzed "at the time of removal." *Hunter*, 102 F.4th at 868 (citation omitted). Thus, if the PBMs had removed at any time after the County's revocation of the Red Flag Analysis—which came one day after its production in discovery—the district court would have had to

consider whether the revocation affected the PBMs' ability to remove. At a minimum, that would have introduced ambiguity into the removability analysis.

This Court's application of the "unambiguous[]" and "unequivocal" standard in *Gibson* is instructive. There, the Court concluded that a plaintiff's "settlement demand" of $6,500,000 "to resolve th[e] matter" did not satisfy CAFA's $5,000,000 jurisdictional requirement because the "letter did not specifically and unambiguously state … that respondents were now seeking to recover that amount in damages or that they would definitively and finally settle the matter for the recommended sum." *Gibson*, 840 F.3d at 521-22. Other courts of appeals have adopted a similarly "strict" approach. *Paros Properties LLC v. Colo. Cas. Ins. Co.*, 835 F.3d 1264, 1269, 1270 (10th Cir. 2016). In one case, for example, a plaintiff stated that he had suffered injuries "while working at" a military base, but the court of appeals found that statement insufficient to unambiguously disclose a basis for removal under the federal-enclave doctrine, because "working at" could have been used either temporally or geographically. *Id.* at 1269 (citing *Akin v. Ashland Chem. Co.*, 156 F.3d 1030, 1036 (10th Cir. 1998)). The ambiguity determination in this case is straightforward compared to those: If ambiguity can exist even when a plaintiff appears to expressly *state* the grounds supporting removal, it surely exists here given that the County expressly *disavowed* the grounds supporting removal.

The district court's position is also inconsistent with the objectives that have informed this Court's construction of the removal procedure statute. The Court explained in *Gibson* that a "bright-line approach" under which Section 1446(b)(3)'s 30-day clock is triggered only by unequivocal statements supporting removal "promotes clarity and ease of administration for the courts, discourages evasive or ambiguous statements by plaintiffs in their pleadings and other litigation papers, and reduces guesswork and wasteful protective removals by defendants." *Gibson*, 840 F.3d at 520-21 (quoting *Walker*, 727 F.3d at 825). By contrast, if this Court were to adopt the district court's approach, defendants would have an incentive to engage in a protective removal any time a plaintiff's pleadings or other papers remotely suggest grounds for removal, even where the plaintiff disavows its statements and enters into a stipulation designed to remove the basis for federal jurisdiction. As this Court and others have explained, no one in the system—not plaintiffs, defendants, or courts—would benefit from such a rule, which would produce wasteful and costly satellite litigation that can often be avoided. *See id.*[3]

---

[3] Given that the removal procedure statute expressly mentions the prospect of Rule 11 sanctions for an unjustified removal, 28 U.S.C. § 1446(a), the district court's rule would also present defendants with "an intractable dilemma" of either "forgoing removal" or "hurriedly" removing and "risking Rule 11 sanctions for noticing removal without making an adequate inquiry." *Lovern v. Gen. Motors Corp.*, 121 F.3d 160, 163 (4th Cir. 1997).

**D.** **The PBMs Timely Removed Within 30 Days Of The 2023 Expert Discovery Providing Grounds For Federal Officer Removal**

Because the County's "initial pleading" did not explicitly disclose a basis for federal officer removal and the PBMs received no "other paper from which it" could be unambiguously "ascertained that the case … is or has become removable" before November 2023, 28 U.S.C. § 1446(b)(3); *see Gibson*, 840 F.3d at 520, the PBMs retained the option to remove the case on federal officer grounds if such grounds became apparent. That occurred on November 15, 2023, when the County served three expert liability reports revealing that the County—despite its disclaimer and stipulation—would rely on the PBMs' federal work in advancing its public nuisance claim. App. 23; R. Doc. 1 at 12; *see* App. 24; R. Doc. 1 at 13. The PBMs accordingly removed on December 1, 2023, well within the 30 days allowed by Section 1446(b)(3). App. 46; R. Doc. 1 at 35.

In contrast to its conduct in 2022, when the County revoked its discovery and disclaimed reliance on the PBMs' work for federal clients, the County this time *confirmed* that it would rely on data of prescription claims the PBMs processed for TRICARE, the VHA, and other federal plans as "evidence" supporting its public nuisance claim. App. 23-24; R. Doc. 1 at 12-13. That step removed any potential

ambiguity about the availability of federal officer removal, thereby confirming that the PBMs' removal is timely. *Gibson*, 840 F.3d at 520.[4]

## II.   THE PBMs' 2023 FEDERAL OFFICER REMOVAL WAS PROPER

In addition to being timely, the PBMs' removal was substantively proper. The federal officer removal statute permits removal by a defendant "acting under" a federal officer who is sued "for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1). This Court has interpreted that provision to require a removing defendant to show that "(1) it acted under the direction of a federal officer, (2) there is a connection between the [plaintiffs'] claims and the official authority, (3) the defendant has a colorable federal defense to the plaintiffs' claims, and (4) the defendant is a 'person,' within the meaning of the statute." *API*, 63 F.4th at 714. The district court did not disagree with the PBMs' position that they satisfy all of those requirements based on the substantive allegations in the complaint. The district court instead stated in a two-sentence footnote that the County had successfully severed

---

[4]   The PBMs would be entitled to remove based on the grounds for federal officer removal created by the County's 2023 liability expert reports even if they did not unambiguously disclose a basis for removal. *See, e.g., Cutrone*, 749 F.3d at 147 (explaining that discretionary removal is available in such circumstances even if the mandatory 30-day period of Section 1446(b)(3) is not triggered); *see Mumfrey,* 719 F.3d at 398-99, 400 n.13 (same); *Kuxhausen,* 707 F.3d at 1141 n.3 (same). The Court need not address that issue here because the County's confirmation of its intent to rely on the PBMs' work for federal clients as evidence supporting its public nuisance claim removes any ambiguity. *See Romulus*, 770 F.3d at 80 n.12 (declining to address the issue in similar circumstances).

the requisite connection by purportedly disclaiming "all challenges related to federal prescription claims in the Stipulations entered between the parties." App. 667; R. Doc. 58 at 11 n.12; Add. 11 n.12. That reasoning contains several legal errors warranting reversal.

### A.    The PBMs Satisfied All Elements Of Federal Officer Removal

There is no dispute that the PBMs satisfied three of the four elements of federal-officer removal: They (1) acted under the direction of a federal officer, (2) have at least one colorable federal defense to the County's claims, and (3) are corporations and therefore "persons" entitled to invoke the removal statute. *API*, 63 F.4th at 714; *see* App. 25-33; R. Doc. 1 at 14-22 (showing "acting-under" element is met), App. 39-42; R. Doc. 1 at 28-31 ("colorable-defense" element), App. 42-43; R. Doc. 1 at 31-32 ("person" element); *see generally* App. 564-83; R. Doc. 37 at 1-20 (not contesting these elements).

The County disputes only the "connection" element—the requirement that the plaintiff's claims have "ha[ve] a 'connection' or 'association' with" the removing defendant's actions under a federal officer. *API*, 63 F.4th at 715. But as this Court has recognized in a case with facts similar to this one, "[t]he hurdle erected by" the connection "requirement is quite low." *Jacks*, 701 F.3d at 1230 n.3 (citation omitted) (permitting federal officer removal by health insurance carrier administering benefits for federal health plan). And the hurdle has become even lower since 2011,

when Congress expanded Section 1442(a)(1) to allow removal not only of claims "for" a defendant's acts under color of office but also of claims "relating to" a defendant's acts under color of office. *See API*, 63 F.4th at 714-15.

That requirement is readily satisfied here, as the Fourth Circuit and the federal district court overseeing the opioid MDL have correctly held in opioids lawsuits containing allegations materially identical to this one. *See Arlington County*, 996 F.3d at 256-57; *Frederick County*, 2023 WL 166006, at *5-6; *cf. Hawai'i v. CaremarkPCS Health, LLC*, 2024 WL 1907396, at *11-12 (D. Haw. May 1, 2024) (non-opioids case finding Hawai'i's claims sufficiently "related to" PBM's work for FEHBP plans to support federal-officer removal). Indeed, the connection element is even more clearly satisfied in this case than it was in those cases, because here the County has produced proposed evidence on liability—the expert reports—rather than mere allegations. And the County *expressly admits* that the expert liability reports rely on "analyses of federal claims" as "evidence" to prove its case. App. 640; R. Doc. 51-1 at 2; *see* App. 574-75; R. Doc. 37 at 11-12 (County describing its experts' use of federal data as "evidence" of the PBMs' "overall knowledge" which supposedly supports the County's liability case).

To take just a few examples, the County's experts conducted a "red flag" analysis of data produced by the PBMs and by retail pharmacies to opine that the PBMs processed tens of thousands of insurance claims—many of which were for

federal plans—dispensed in the Jefferson County area that met the County's "red flag" criteria. App. 34-35; R. Doc. 1 at 23-24; Add. 16-17. This "red flag analysis" relies in part on data from retail pharmacies that do not identify the health plan that covered each prescription, making it impossible to carve out which particular "red flag" prescriptions were for members of federal plans even if the County's liability experts had tried to do so (which they did not). App. 35; R. Doc. 1 at 24; Add. 17. Instead, the County's experts opine that the PBMs should be liable for "every opioid sold," irrespective of whether the prescription opioid was dispensed to a member of a federal plan. *Id.* The County's experts also contend that the PBMs must provide "abatement" for the entire opioid crisis in Jefferson County, and the County's proposed abatement plan seeks abatement in connection with the aggregate impact of *all* opioid prescriptions dispensed in the County, including those to members of the PBMs' federal clients. App. 36; R. Doc. 1 at 25; Add. 18. Those positions are almost identical to the allegations that the Fourth Circuit relied on in finding the connection requirement satisfied. *See Arlington County*, 996 F.3d at 256-57 ("Arlington's claims seek monetary damages due to harm arising from every opioid prescription filled by pharmacies such as the ESI Defendants.") (quotations omitted). The same outcome follows even more clearly here.

**B.    The County's Purported Disclaimer Did Not Sever The Connection Between Its Claims And The PBMs' Acts For Federal Officers**

The district court did not disagree with the PBMs that the County's claims implicate all four elements required for federal officer removal. Instead, the court stated in a brief footnote that the County's asserted disclaimer of "all challenges related to federal prescription claims" had severed the relationship between its claims and the PBMs' work for federal clients. App. 667; R. Doc. 58 at 11 n.12; Add. 11 n.12. The court erred in reaching that conclusion for at least two independent reasons.

1.    Even if a disclaimer might be enforceable in certain circumstances, the County's disclaimer here is not. The County's central claim is that the PBMs contributed to a public nuisance, App. 291-92; R. Doc. 1-3 at 244-45, which requires an "unreasonable interference with the rights *common to all members of the community*," *City of St. Louis v. Benjamin Moore & Co.*, 226 S.W.3d 110, 116 (Mo. 2007) (emphasis added). Because a public nuisance claim by its nature concerns the public as a whole, it is not susceptible to the artificial subdivision between federal and non-federal components that the County proposes. *See API*, 63 F.4th at 715 n.11 (explaining that the presence of nuisance claim inherently "creates a stronger case for federal jurisdiction").

The allegations in the County's complaint underscore that flaw in its position. The County alleges that the PBMs engaged in a "common" course of conduct,

including "failure to conduct adequate safety and efficacy studies, failure to properly monitor and report suspicious activity, misleading marketing materials and literature promoting the safety of opioids, and inadequate warnings provided to physicians and consumers." App. 69; R. Doc. 1-3 at 22 (emphasis added). None of those broad allegations can be coherently divided to exclude PBM conduct on behalf of federal clients while encompassing PBM conduct on behalf of non-federal clients.

Similarly, the County blames the PBMs for allegedly "driving patients to opioids," App. 18; R. Doc. 1 at 7, "pushing dangerous drugs," App. 292; R. Doc. 1-3 at 245, "flood[ing] the market," App. 267; R. Doc. 1-3 at 220, and contributing "to the creation of the illegal diversion market in St. Louis City for the sale of illegal opioids in St. Louis City and Plaintiff County," App. 274; R. Doc. 1-3 at 227—none of which can be subdivided as the County proposes. And the County alleges that the PBMs "had access to sales data and reports, adverse event reports, federal abuse and addiction-related surveillance data, and other sources that demonstrated the widening epidemic of opioid abuse and addiction." App. 224; R. Doc. 1-3 at 177. By definition, much of that data comes from the PBMs' federal clients, including the DoD—Express Scripts' largest client. App. 644; R. Doc. 52 at 1; Add. 23.

Even if the County could somehow devise a theory for disaggregating the federal-client components of those allegations, moreover, the County's allegations would still "*relate to*" the PBMs' work for federal clients, given that the PBMs

performed the same services for those clients as they did for their other clients as to which the County purportedly limits its claims. 28 U.S.C. 1441(a)(1) (emphasis added). That is enough to support federal officer removal. *Id.*

Partly for those reasons, the Fourth Circuit in *Arlington County* and Judge Polster in *Frederick County* rejected arguments that the plaintiffs in those cases were not challenging the PBMs' federal work because the complaints did not mention Express Scripts' federal clients by name. To allow the County to artificially subdivide its claim—whether expressly or by implication—would "elevate form over substance." *Arlington County*, 996 F.3d at 256; see *Frederick County*, 2023 WL 166006, at *5 ("Federal jurisdiction cannot be avoided merely by careful or creative word-smithing."). Under the federal officer removal statute, "the dispositive question is whether the government directed a defendant to perform the acts for which it is being sued, not whether the complaint mentions the government contract"—or purports to disclaim it. *Id.*; *cf. Hawai'i*, 2024 WL 1907396, at *11-12 (finding non-opioid claims sufficiently "related to" PBM's work for FEHBP plans to support federal-officer removal despite purported disclaimer).

The district court relied on decisions in three non-opioids, non-public nuisance cases, App. 667; R. Doc. 58 at 11 n.12; Add. 11 n.12, but none of those cases supports its holding. This Court's decision in *API* did not rely on a purported disclaimer of certain aspects of the plaintiff's claim, as the County attempts here;

*API* instead held that the "connection" element was absent because the plaintiff had challenged separate conduct (marketing) that bore "little to no relationship" to the companies' activities for the federal government (physical production of fossil fuels). 63 F.4th at 715. *API* also did not involve a public nuisance claim, *see id.* at 715 n.11, and neither did the two remand rulings against PBMs in insulin-pricing cases that the district court cited, *see California v. Eli Lilly & Co.*, 2023 WL 4269750 (C.D. Cal. June 28, 2023); *Ohio ex rel. Yost v. Ascent Health Servs., LLC*, 2024 WL 23187, at *3 (S.D. Ohio Jan. 2, 2024). The plaintiffs in those cases alleged that diabetes patients overpaid for certain insulin prescriptions, and their disclaimers accordingly seek to limit the cases to that set of allegedly overpriced prescriptions. Here, by contrast, the County alleges liability that accrues only—if at all—by reference to the aggregate impact of *all* opioid prescriptions in the County.[5]

    **2.**    In any event, even if a public nuisance plaintiff could permissibly disclaim recovery in connection with opioids prescribed through specific federal health plans—as two district courts have incorrectly held in recent months, *see Westchester County v. Mylan Pharms., Inc.*, 2024 WL 3043121 (S.D.N.Y. June 18, 2024); *California v. Express Scripts*, *Inc.*, 2024 WL 841197 (C.D. Cal. Feb. 28,

---

[5] In any event, the disclaimers in those cases are ineffective, and Express Scripts has appealed two of them. *Ohio ex rel. Yost v. Ascent Health Services, LLC*, No. 24-03033 (6th Cir.); *California v. Express Scripts, Inc.*, No. 23-55599 (9th Cir.).

2024)[6]—this case is fundamentally different because the County *abandoned* its disclaimer. As explained at length above, the County said it was disclaiming reliance on the PBMs' work for federal officers, but the County then *admitted* that it is using thousands of prescription claims the PBMs processed for federal health plans as "evidence" to prove its case. *See* p. 42, *supra*. Whatever might be said about a disclaimer of federal work that a plaintiff follows, there is no basis for allowing a plaintiff to avoid federal officer removal when it concedes that it is seeking to impose liability related to the defendants' work for federal agencies. This Court can reverse on that straightforward basis without splitting from any other court that has addressed removal questions in this context—and while aligning with the most persuasive decisions on the issue. *See Arlington County,* 996 F.3d 243; *In re Nat'l Prescription Opiate Litig.,* 2023 WL 166006; *cf. Hawai'i,* 2024 WL 1907396.

## CONCLUSION

The Court should reverse the decision below.

---

[6] The PBMs have appealed these decisions as well. *Westchester County v. Mylan Pharms., Inc.*, No. 24-1639 (2d Cir.); *California v. Express Scripts, Inc.*, No. 24-1972 (9th Cir.).

Respectfully submitted.

DATED:  June 26, 2024             **QUINN EMANUEL URQUHART &**
                                  **SULLIVAN, LLP**


                                  By*/s/ Jonathan G. Cooper*
                                  _____
                                       Michael Lyle
                                       Jonathan G. Cooper
                                       Christopher G. Michel
                                       1300 I St. NW, Suite 900
                                       Washington, DC 20005
                                       mikelyle@quinnemanuel.com
                                       jonathancooper@quinnemanuel.com
                                       christophermichel@quinnemanuel.com
                                       (202) 538-8000

                                  **NICHOLS  LANG  &  HAMLIN,  LLC**
                                       Christopher J. Lang
                                       1795 Clarkson Road, Ste 230
                                       Chesterfield, MO 63017
                                       Tel.: (314) 429-1515
                                       Fax: (314) 428-9592
                                       chris@nlh-law.com

                                  *Attorneys for Defendant-Appellant*
                                  *Express Scripts, Inc*


        [additional counsel listed on following page]

DATED:  June 26, 2024     **ALSTON & BIRD LLP**

By*/s/ Brian D. Boone*
    Brian D. Boone
    Michael R. Hoernlein
    Vantage South End
    1120 South Tryon St., Suite 300
    Charlotte, NC 28203
    Tel: (704) 444-1000
    brian.boone@alston.com
    michael.hoernlein@alston.com

    Bradley J. Schlozman
    1617 North Waterfront Parkway
    Suite 400
    Wichita, KS 67206
    Tel.: (316) 267-2000
    Fax: (316) 630-8466
    bschlozman@hinklaw.com

    *Attorneys for Defendant-Appellant*
    *OptumRx, Inc.*

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a). This brief contains 12,004 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in fourteen (14) point Times New Roman font.

Dated:  June 26, 2024

*/s/ Jonathan G. Cooper*
Jonathan G. Cooper
Attorney for Appellant Express Scripts, Inc.

## CIRCUIT RULE 28A(h) CERTIFICATION

The undersigned hereby certifies that I have filed electronically, pursuant to Circuit Rule 28A(h), a version of the brief in non-scanned PDF format.  I hereby certify that the file has been scanned for viruses and that it is virus-free.


*/s/ Jonathan G. Cooper*
Jonathan G. Cooper

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on June 26, 2024, an electronic copy of the Joint Brief of Defendants-Appellants was filed with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. The undersigned also certifies that all participants in this case are registered CM/ECF users and that service of the Brief will be accomplished by the CM/ECF system.

*/s/ Jonathan G. Cooper*
Jonathan G. Cooper