# No. 24-1550

## In the
# United States Court of Appeals
## for the Eighth Circuit

JEFFERSON COUNTY,

*Plaintiff-Appellee,*

v.

DANNIE E. WILLIAMS, M.D., et al,

*Defendants,*

EXPRESS SCRIPTS, INC. and OPTUMRX, INC.,

*Defendants-Appellants.*

---

Appeal from the United States District Court
for the Eastern District of Missouri – St. Louis,  No. 4:23-cv-01539-MTS.
The Honorable Matthew T. Schelp, Judge Presiding.

## ADDENDUM TO JOINT BRIEF OF DEFENDANTS-APPELLANTS EXPRESS SCRIPTS, INC. and OPTUMRX, INC.

MICHAEL LYLE
JONATHAN G. COOPER
CHRISTOPHER G. MICHEL
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
1300 I St. NW, Suite 900
Washington, DC 20005
(202) 538-8000

CHRISTOPHER J. LANG
NICHOLS LANG & HAMLIN, LLC
1795 Clarkson Road, Suite 230
Chesterfield, MO 63017
(314) 429-1515

*Counsel for Express Scripts, Inc.*

BRIAN D. BOONE
MICHAEL R. HOERNLEIN
ALSTON & BIRD LLP
Vantage South End
1120 South Tryon Street
Suite 300
Charlotte, NC 28203
(704) 444-1000

BRADLEY J. SCHLOZMAN
HINKLE LAW FIRM LLC
1617 North Waterfront Pkwy, Suite 400
Wichita, KS 67206
(316) 267-2000

*Counsel for OptumRx, Inc.*

## TABLE OF CONTENTS TO ADDENDUM

Memorandum and Order filed March 8, 2024 (Doc. 58) ..................................Add.1

PBMs' Notice of Removal filed December 1, 2023 [pps. 8-9]
(Doc. 1)  .......................................................................................................Add.13

PBMs' Notice of Removal filed December 1, 2023 [pps. 22-26]
(Doc. 1)  .......................................................................................................Add.15

Joint Stipulation and (Proposed) Order Regarding Federal Plans
[pps 1-3] (Doc. 2-16) .....................................................................................Add.20

Declaration of Thomas D. Jenkins filed January 12, 2024 (Doc. 52) ............Add.23

i

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JEFFERSON COUNTY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:23-cv-1539-MTS |
| | ) | |
| DANNIE E. WILLIAMS, M.D., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM AND ORDER</u>

Before the Court is Plaintiff's Motion to Remand, Doc. [36].  On August 1, 2018, Plaintiff filed its initial Petition in the Twenty-Second Judicial Circuit Court of Missouri in the City of St. Louis ("22nd Judicial Circuit").[1]  Doc. [9].  Plaintiff then filed a First Amended Petition, Doc. [11], on October 21, 2019, and a Second Amended Petition, Doc. [13], on June 15, 2020.  On December 1, 2023, more than three years later, Defendants filed their Notice of Removal seeking removal pursuant to 28 U.S.C. §§ 1442(a), (hereinafter "the federal officer removal statute") and 1446(b)(3).  Doc. [6].  Now, Plaintiff seeks remand to state court.  For the reasons that follow, the Court will grant Plaintiff's Motion to Remand.

## <u>Background</u>

Between 2013 and 2017, Plaintiff Jefferson County incurred 324 deaths, 1,941 emergency room visits, and other alleged costs including harm to law enforcement, prosecution, prisons, addiction treatment, and elsewhere, due to the alleged abuse, "misbranding," and "overabundance" of opioids.  Doc. [13] at 1, ¶ 1.  It is Plaintiff's position that, absent these preferences, the opioids "would not have entered the marketplace."  *Id.* ¶ 683.  As a result, on January 29, 2019, Plaintiff

---

[1] On December 20, 2019, the 22nd Judicial Circuit ordered a change of venue, Doc. [12], from the Circuit Court of the City of St. Louis to the Jefferson County Circuit Court, the Twenty-Third Judicial Circuit of Missouri.

filed this action along with twenty cities and counties to recover the "public costs" incurred in combatting the opioid epidemic. Doc. [13] ¶ 683; Doc. [6] ¶ 12. At the time of filing, Plaintiff named numerous parties as Defendants including opioid manufacturers, distributors, retail pharmacies, and pharmacy benefit managers ("PBMs"). Doc. [13] at 1. Following Plaintiff's filing, then-Defendant CVS Pharmacy, Inc., removed the case to this Court under 28 U.S.C. § 1332(d), the Class Action Fairness Act. Doc. [6] ¶ 12.[2] The case was then transferred to the federal Opioid Multidistrict Litigation ("MDL"), but, on July 24, 2019, the presiding judge "severed and remanded the Jefferson County and Franklin County cases to Missouri state court."[3] Doc. [6] ¶13; *In re: National Prescription Opiate Litigation*, 1:17-md-2804-DAP, ECF No. 1987 (N.D. Ohio, July 22, 2019). However, prior to the severance and remand, several Defendants, to no avail, joined in an Objection to Sever and Remand, *see id.* at ECF No. 1931, including Express Scripts, Inc. and OptumRx, Inc.

At present, only Express Scripts, Inc., ("Express Scripts") and OptumRx, Inc., ("OptumRx") remain as Defendants (collectively, "the Defendants" or "the PBM Defendants"). Express Scripts and OptumRx are PBMs that act as "gatekeepers" by "negotiat[ing] with drug manufacturers to offer preferred drug formulary[4] placement for the manufacturers' drugs" and establish reimbursement rates for the drugs dispensed. Doc. [13] ¶ 665. However, Plaintiff alleges that these PBMs, through formularies and pricing strategies, are "driving patients to opioids" and

---

[2] Although not included in the Second Amended Petition, the facts provided within the Notice of Removal may also be referenced by the Court in its review. *See Macaulay v. St. Louis BOA Plaza, LLC*, 4:21-cv-476-SRC, 2021 WL 3472632, at *2 (E.D. Mo. Aug. 6, 2021) ("'[A] defendant's notice of removal need include only a plausible allegation' that the jurisdictional requirements are satisfied." (quoting *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 88 (2014))).

[3] The presiding judge acknowledged that two Missouri state court judges contacted him and requested these cases be remanded. Doc. [6] ¶ 13. One of the requesting judges wrote a letter requesting that the Jefferson and Franklin County cases, specifically, be remanded to the 22nd Judicial Circuit. *Id.*

[4] A formulary is a "list of prescription drugs covered by a prescription drug plan or another insurance plan offering prescription drug benefits." *See Formulary*, HealthCare.gov (last visited March 8, 2024), https://www.healthcare.gov/glossary/formulary/.

Add.2

"away from" abuse-deterrent and less addictive forms of opiates. *Id.* ¶ 707. In addition to providing PBM services through mail order pharmacies, Defendants are also engaged in providing PBM services to federal agencies. *Id.* ¶ 667; Doc. [6] ¶¶ 10-11. For example, Express Scripts has contracted with the Department of Defense ("DoD") to provide services to its TRICARE[5] plan and the Federal Employee Health Benefits Plan ("FEHBP") overseen by the Office of Personnel Management ("OPM"). Doc. [6] ¶ 10. OptumRx is also under contract to provide PBM services to the Veterans Health Administration ("VHA"). *Id.* ¶ 11.

In its Second Amended Petition, Plaintiff alleges Defendants contributed to the opioid crisis by "controlling which pain medications reach[ed] the marketplace" through the design of their formulary. Doc. [13] ¶¶ 665, 713. Plaintiff also claims Express Scripts and OptumRx derive substantial revenue as PBMs and utilize their formularies to grant "preferred alternative status" to OxyContin and morphine over less addictive opioids. Doc. [13] ¶¶ 670, 679; Doc. [6] ¶ 12.

In their requests for discovery, Defendants sent interrogatories to Plaintiff on the scope of its claims. Specifically, Defendants inquired whether the claims are related to Defendants' contractual services to federal health plans. Doc. [6] ¶¶ 18-20. In response to OptumRx's Interrogatory Nos. 11 and 12, Plaintiff provided Defendants with what has been labeled as the "Red Flag Analysis," which identified the prescription claims on which Plaintiff relied in its case.[6] *Id.* ¶ 21. Plaintiff continued to identify the claims relied on in subsequent Red Flag Analyses, including the Sixth Red Flag Analysis served on February 14, 2022, which contained 9,326 prescription claims adjudicated by Express Scripts on behalf of the DoD for TRICARE.[7] *Id.* ¶ 23.

---

[5] TRICARE is a DoD health-care program that "covers active-duty service members and veteran retirees." Doc. [6] ¶ 10.
[6] More specifically, the Red Flag Analysis identifies "the alleged indicators or warning signs that the County contends could suggest problematic prescriptions." Doc. [6] ¶ 21.
[7] Defendant's Notice of Removal, Doc. [6], details that Plaintiff served the Sixth Red Flag Analysis on February 3rd, before sending "formal notice" that it was withdrawing the February 3rd version. Doc. [6] ¶ 23. Then, the Notice of Removal continues to state that the County served a revised Red Flag Analysis on February 14th. *Id.* ¶ 24. Contrary

Although the Sixth Red Flag Analysis was later revised on February 14, 2022 to omit the TRICARE claims, the inclusion of the federal prescription claims, in Defendants' view, suggested Plaintiff was seeking to establish liability for federal prescription claims. *Id.* ¶¶ 24-25.  As a result, on March 10, 2022, Defendants notified Plaintiff of their intent to remove the action to federal court, unless Plaintiff stipulated that it would "withdraw[] all challenges to federal prescription claims and [] not seek recovery" based on the federal prescription claims. *Id.* ¶ 25.  Plaintiff communicated its withdrawal in writing on March 11, 2022, but the parties memorialized Plaintiff's withdrawal from challenging the federal prescription claims in two separate Joint Stipulation and Consent Orders, the first of which was entered by the court on March 17, 2022.[8] *See id.* ¶ 25; Docs. [2-16], [2-17].

The first Joint Stipulation and Consent Decree ("the First Stipulation") provided that Plaintiff would not "now or any time in the future seek to establish liability" against Defendants in connection with any "Federal Plan."[9]  Doc. [2-16] ¶ 2.  Plaintiff then executed a second Joint Stipulation and Consent Decree (collectively, "the Stipulations") with OptumRx memorializing a similar guarantee.[10]  *See* Doc. [2-17].  However, in the most recent Red Flag Analysis served on November 15, 2023, Plaintiff produced three expert reports discussing its theories of liability that failed to differentiate between federal and non-federal adjudicated prescription claims.  Doc. [6] ¶¶ 35-36.  Because federal prescription claims were included within the expert reports, and despite

---

to the Notice of Removal, the First Stipulation entered into between the parties states that "on February 14, 2022, Jefferson County served the PBM Defendants with responses to Interrogatories identifying the claims at issue. The PBMs have informed Jefferson County that those responses include federal prescription claims," signaling that the initial date of service allowing for removal was, in fact, February 14, 2022. Doc. [2-16] at 1.

[8] The parties entered into the first Joint Stipulation and Consent Order on March 16, 2022.  The Stipulation itself is dated as ordered on March 17, 2022.  *See* Doc. [2-16] at 3.

[9] The Stipulation defines a Federal Plan as "any health care plan that is fully or partially funded by the federal government, any plan that is administered by any federal agency, or any plan that is delegated for administration by any federal agency."  Doc. [2-16] ¶ 1.  These plans include TRICARE, Federal Employment Health Benefits Act ("FEHBA") plans, among others.  *Id.*

[10] Both Stipulations were entered into the record and signed by the Hon. Judge Rathert.

the previous execution of the Stipulations, Defendants believe Plaintiff is now seeking to establish liability in relation to the federal prescription claims and removed the action to this Court.

**Discussion**

I.    **Defendants' removal was untimely because they failed to remove the action within thirty days of the date the case was first ascertained to be removable.**

Federal courts are courts of limited jurisdiction. *Myers v. Richland Cnty.*, 429 F.3d 740, 745 (8th Cir. 2005) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). As such, federal courts are authorized to hear cases only as provided by the Constitution and by statute. *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen*, 511 U.S. at 377). "A defendant may remove a state law claim to federal court only if the action originally could have been filed there." *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 619 (8th Cir. 2010). Typically, removal statutes are strictly construed, and "all doubts about federal jurisdiction must be resolved in favor of remand." *Cent. Iowa Power Co-op. v. Midwest Indep. Transmission Sys. Operator, Inc.*, 561 F.3d 904, 912 (8th Cir. 2009).

The federal removal statute, 28 U.S.C. § 1446, provides that a defendant must file a notice of removal within thirty days after receipt of an "initial pleading setting forth the claim for relief for which such action of proceeding is based." 28 U.S.C. § 1446(b)(1). Congress created an exception for cases that are not removable as originally filed, 28 U.S.C. § 1446(b)(3), which states, "if the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order, or other paper from which it may first be ascertained that the case is one which is or has become removable." *Dahl v. R.J. Reynolds Tobacco Co.*, 478 F.3d 965, 968 (8th Cir. 2007) (quoting 28 U.S.C. § 1446(b)(3)).

Here, following Plaintiff's filing of its initial pleading, the present action was removed to

federal court, and prior to any decision on severance or remand, Defendants Express Scripts and OptumRx joined in a collective objection to a request seeking to sever and remand Jefferson County's claims to state court. *See In re National Prescription Opiate Litigation*, ECF. No. 1931. The filed objection necessarily meant Defendants maintained subject matter jurisdiction existed; that is, it implicitly communicated Defendants' belief that the initial pleading was, in fact, removable. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."); *4:20 Commc'ns, Inc. v. Paradigm, Co.*, 336 F.3d 775, 778 (8th Cir. 2003) (explaining "parties may not expand the limited jurisdiction of the federal courts by waiver or consent"); Fed. R. Civ. P. 11(b). Nonetheless, the federal judge presiding over the Opioid MDL severed and remanded the action, and in doing so, noted the "claim of federal jurisdiction" was "very tenuous" but did not make a jurisdictional finding. *In re National Prescription Litigation*, ECF No. 1987 at 3. Rather, he opted to "exercise [the court's] discretion to sever the claims" and remand them. *Id.*; *see also* Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party."). Though this case lacks a finding that "the initial pleading [wa]s not removable," and though Defendants signed on to an opposition to remand the initial pleading, Defendants did not include any analysis within its Notice of Removal or in its Memorandum in Opposition to the Motion to Remand showing that the initial pleading was not removable.

But even if the initial pleading was not removable, the Court agrees with Plaintiff that the case became removable, if ever, on February 14, 2022. Defendants acknowledged the same in their Notice of Removal, as well as the First Stipulation entered between the parties. *See* Doc. [6] ¶ 25 (arguing that the February 14, 2022 Sixth Red Flag Analysis "appeared to suggest that the

6

County was still seeking to hold the PBMs liable for prescription claims adjudicated or processed for other federal health plans"); *see also* Doc. [2-16] at 1 ("**WHEREAS**, on February 14, 2022, [Plaintiff] served the PBM Defendants with responses" that identified the claims at issue and included "federal prescription claims adjudicated or processed by the PBM Defendants"); *see also* Doc. [38-1] ("[B]ecause those February 14 responses show that the County challenges many different federal prescription claims, the PBM Defendants are entitled to remove"). As such, the PBM Defendants were entitled to remove the case to federal court. It is of no moment that the County responded that it was "not challenging federal prescription PBM claims," Doc. [1] ¶ 26, or that more than thirty days after February 14th the state court entered a joint stipulation to that effect.

"A triggering document can only supply a basis for recommencing the thirty day period if from its receipt, 'it may first be ascertained that the case is or has become removable.'" *Dahl*, 478 F.3d at 970 (quoting 28 U.S.C. § 1446(b)). "The traditional rule is that only a voluntary act by the plaintiff may convert a non-removable case into a removable one." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 761 (11th Cir. 2010); *see also Addo v. Globe Life & Accident Ins. Co.*, 230 F.3d 759, 762 (5th Cir. 2000) ("[The] 'other paper' must result from the voluntary act of a plaintiff which gives the defendant notice of the changed circumstances which now support federal jurisdiction."). Here, the Sixth Red Flag Analysis, initially provided by Plaintiff to Defendants in response to OptumRx's Interrogatory Nos. 11 and 12, *see* Doc. [6] ¶ 21, are sufficient "other paper" for purposes of removal, and the Red Flag Analysis was served on the PBM Defendants by the Plaintiff on February 14, 2022. *See Branham v. Hunter's View, Ltd.*, 4:11-cv-230-TCM, 2011 WL 1660559, at *2 (E.D. Mo. May 3, 2011) ("Documents found to be an 'other paper' for removal purposes consistently themselves contained information from which it could be reasonably

7

ascertained that the case was removable"); *see also State Farm Fire and Cas. Co. v. Valspar Corp., Inc.*, 824 F. Supp. 2d 923, 933 (D.S.D. Sept. 24, 2010) (finding that "notice of removability under § 1446(b) may be provided by answers to discovery requests").  However, the present situation is unique in that the Plaintiff attempted to withdraw the discovery and later, stipulated to withdraw all challenges to federally related prescription claims.  Neither the text of § 1446(b)(3), nor any case law briefed by the parties indicates that the start of the new thirty-day period for removal can be undone or cancelled once it has been "ascertained that the case is one which is or has become removable."

The U.S. Court of Appeals for the Eighth Circuit has determined that other timeliness requirements imposed by § 1446(b) are "procedural requirements, not jurisdictional ones."  *See Quintero Cmty. Ass'n Inc. v. F.D.I.C.*, 792 F.3d 1002, 1007 (8th Cir. 2015); *see also State Farm Fire and Cas. Co.*, 824 F. Supp. 2d at 938 (citing *Williams v. Safeco Ins. Co. of Am.*, 74 F. Supp. 2d 925, 928 (W.D. Mo. 1999)).   "Time requirements in lawsuits between private litigants are customarily subject to 'equitable tolling.'" *Irwin v. Dep't of Veteran Affs.*, 498 U.S. 89, 95 (1990). But Defendants have failed to present an argument in which equitable tolling allows for removal here.  *Boyke v. Celadon Trucking Servs., Inc.*, 4:08-cv-01857-FRB, 2009 WL 1393870, at *3 (E.D. Mo. May 15, 2009) (finding that "no situation" demanded resolving the issue in the defendant's favor where the defendants "present[ed] no facts or argument . . . explaining why tolling or equitable remedy should apply").  To qualify for equitable tolling, a litigant "bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way." *Capiz-Fabian v. Barr*, 933 F.3d 1015, 1018 (8th Cir. 2019) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).  The Eighth Circuit generally reserves the remedy of equitable tolling for circumstances that were "truly beyond the control" of

Add.8

the plaintiff. *See Capiz-Fabian*, 933 F.3d at 1018; *see also Hill v. John Chezik Imps.*, 869 F.2d 1122, 1124 (8th Cir. 1989).

Assuming without deciding that § 1446(b)(3)'s timeliness requirements for removal are capable of being tolled, here, the PBM Defendants have failed to meet either prerequisite for equitable tolling. First, Defendants cannot be said to have diligently pursued their rights. Defendants initially joined in objecting to this action being severed from the Opioid MDL. This objection implicitly communicated Defendants' belief that the present action was, in fact, initially removable. Then, removal was not contemplated again until the Defendants received the Sixth Red Flag Analysis. Though they were, as they put it, "entitled to remove this case to federal court," Defendants elected to enter into a Stipulation rather than pursue removal. Doc. [38-1] at 4. As such, Defendants have not diligently pursued their right of removal to this Court. Second, Defendants, in some aspects, contributed to the extraordinary circumstances present. On February 14, 2022, Defendants received Plaintiff's Sixth Red Flag Analysis, which included both federal and non-federal prescription claims as a potential basis for liability. Defendants acknowledged that the Sixth Red Flag Analysis clearly provided an avenue for removal when they notified Plaintiff of their intent to remove to this Court. However, Defendants' subsequent decision to forego their right of removal, so long as Plaintiff withdrew all claims related to federal prescription claims and stipulated that it was not seeking liability for such claims, is a circumstance that was concocted by the PBM Defendants, themselves. Defendants cannot then claim that removal was no longer available from circumstances beyond their control. To allow tolling when Defendants initially supported this Court's jurisdiction, and later, willingly agreed to remain in state court following receipt of the Sixth Red Flag Analysis, would allow Defendants to have their cake and eat it too. Therefore, here, equitable relief is not appropriate.

9

Add.9

Even assuming the thirty-day period for removal in the present action was paused, the PBM Defendants' removal is still untimely. The thirty-day time limit for removal begins running when a plaintiff "explicitly discloses" she is seeking a remedy affording a basis for federal jurisdiction. *Atwell v. Boston Scientific Corp.*, 740 F.3d 1160, 1162 (8th Cir. 2013); *see also Patrico v. A.W. Chesterton Co.*, 4:14-cv-338-AGF, 2014 WL 2197779, at *3 (E.D. Mo. May 27, 2014) ("[T]he information supporting removal in . . . other paper must be unequivocally clear and certain to start the time limit running for a notice of removal under [§ 1446(b)]" (quoting *Bosky v. Kroger Tex., LP*, 288 F.3 208, 211 (5th Cir. 2002))). Here, Plaintiff served the Sixth Red Flag Analysis on the PBM Defendants on February 14, 2022. Doc. [2-16] at 1. The PBM Defendants understood the Sixth Red Flag Analysis as unequivocally clear and certain because shortly thereafter, on March 10, 2022, the PBM Defendants notified Plaintiff of their intent to remove the action, unless a stipulation was entered into among the parties. *Id.* Plaintiff notified Defendants that it was "not challenging federal prescription PBM claims" on March 11, 2022, and the First Stipulation was then executed on March 17, 2022. Doc. [6] ¶ 26; Doc. [2-16]. From February 14th to March 11th, Defendants had twenty-five days to remove the action.[11] If tolled, the time would seemingly begin to run again when Defendants received Plaintiff's expert reports on November 15, 2023—which failed to distinguish between federal and non-federal prescription claims. Then, following receipt of the reports, Defendants removed the action to this Court sixteen days later, on December 1, 2023. Doc. [1]. In sum, taking into account the initial twenty-five (or thirty-one) days, and the subsequent sixteen days before they filed their Notice of Removal, Defendants sought removal outside of the available thirty-day window. Thus, Defendants still failed to timely remove this action under § 1446(b)(3) even if equitable tolling were appropriate, and since "[r]emoval statutes

---

[11] This number inflates to thirty-one days if the tolling were to begin on March 17, 2022, the date the First Stipulation was entered by the Court.

are strictly construed," remand is warranted.[12]

Defendants failed to argue that this action was not initially removable, and their willingness to join in objection to severance implicitly communicates their acknowledgement of this Court's jurisdiction. Nevertheless, Defendants also failed to remove the action within the required thirty-day window following receipt of other paper upon which it may first be ascertained the case is removable, the Sixth Red Flag Analysis in this instance. Even in the event equitable tolling is available for § 1446(b)(3) removal upon receipt of other paper where circumstances as exhibited here are present, Defendants again failed to seek removal within the thirty-day period. Therefore, the Court will grant Plaintiff's Motion to Remand.

## II.     Fees and costs are not warranted.

Under 28 U.S.C. § 1447(c), "[a]n order remanding the case may require the payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The Court has "considerable discretion" when determining whether an award of attorney fees is proper. *Wells Fargo Bank W., Nat'l Ass'n v. Burns*, 100 F. App'x 599, 599 (8th Cir. 2004) (per curiam). However, the standard for an award turns on the reasonableness of removal, and absent unusual circumstances, attorney fees should only be awarded where "the removing party lacked an objectively reasonable basis for seeking removal." *Covenant Corp. v. City of North Little Rock*,

---

[12] Assuming, alternatively, that Defendants timely filed their Notice of Removal, this Court is unpersuaded that a causal connection is present to allow removal under 28 U.S.C. § 1442. Rather, here, because Plaintiff disclaimed all challenges related to federal prescription claims in the Stipulations entered between the parties, the charged conduct only relates to non-federal prescription claims. *See Minn. by Ellison v. Am. Petroleum Inst.*, 63 F.4th 703, 715-16 (8th Cir. 2023) (finding that because none of the plaintiff's claims seek to hold defendant liable for its federal production activities, the "relationship between [plaintiff's] claims and any federal authority" is "too tenuous to support removal" (citation omitted)); *see also People of the State of Cal. v. Eli Lilly & Co.*, 2:23-cv-1929-SPG-SK, 2023 WL 4269750, at *7 (C.D. Cal. June 28, 2023) (holding that the plaintiff's decision to disclaim any claims against the defendant for TRICARE and FEHBA health plans "negate[d] any causal nexus that might otherwise have existed between [p]laintiff's claims and the [defendants'] conduct on behalf of government officers"); *see also Ohio ex rel. Yost v. Ascent Health Servs., LLC*, 2:23-cv-1450, 2024 WL 23187, at *3 (S.D. Ohio Jan. 2, 2024) (explaining that where the plaintiff's disclaimer identifies it "does not challenge conduct related to TRICARE or FEHB, remand is appropriate).

784 F.3d 479, 483 (8th Cir. 2015) (citing *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 134 (2005)).  To determine whether an objectively reasonable basis for seeking removal is present, the court must consider the objective merits at the time of removal.  *Covenant Corp.*, 784 F.3d at 483.

Plaintiff contends that Defendants had "no business" removing the case, and the circumstances present support an award for the fees and costs incurred in seeking remand.  Doc. [53] at 7.  While the Court has determined remand is proper, objectively speaking, Defendants' attempt to remove through the federal officer removal statute was reasonable.  *See Oklahoma ex rel. Hunter v. McKesson Corp.*, 6:20-cv-0172-RAW, 2020 WL 5814161, at *1-2 (E.D. Okla. Sept. 14, 2020) (holding that, although defendant unsuccessfully sought removal under 28 U.S.C. § 1442 where plaintiff disavowed "all federal claims," the Court "[did] not find that [defendant] lacked any objective reasonable basis for seeking removal").

**Conclusion**

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Remand, Doc. [36], is **GRANTED**.  A separate Order of Remand will be entered after 12:00 p.m. on Friday, March 15, 2024, unless Defendants file a notice of appeal.

Dated this 8th day of March 2024.

_____
MATTHEW T. SCHELP
UNITED STATES DISTRICT JUDGE

21.     Ultimately, the County agreed to identify what it describes as "red flag" criteria—the alleged indicators or warning signs that the County contends could suggest problematic prescriptions—and to apply those criteria to the prescription claims data that the PBMs have produced to the County (the "**Red Flag Analysis**").[3] The purpose of the Red Flag Analysis was to allow the PBMs to understand which prescription claims the County is relying on to support its case so that the PBMs can prepare defenses. The County provided its "Red Flag Analysis" in response to OptumRx, Inc.'s Interrogatory Nos. 11 and 12.

22.     For months, the County served "interim" and ever-shifting Red Flag Analyses. Instead of serving a single, final Red Flag Analysis identifying the challenged prescription claims, the County has so far served *seven* different—and inconsistent—versions of the analysis, each of which purported to supersede earlier versions.

23.     On February 3, 2022, the County served its sixth version of the Red Flag Analysis which identified—for the first time—9,326 prescription claims that Express Scripts adjudicated on behalf of the Department of Defense for TRICARE. The very next day, on February 4, 2022, the County sent a formal notice, a letter, and an email all stating that it was withdrawing the February 3 version in full due to an unspecified "error."

24.     On February 14, 2022, the County served a revised Red Flag Analysis that omitted the TRICARE claims. Because the County apparently cured its "error" by serving the February 14, 2022 Red Flag Analysis, the PBMs understood that the February 14 version represented a complete list of prescription claims that the County contends caused the harm for which it seeks relief.

---

[3] The PBMs do not endorse or agree with the County's use of the language of "red flag" criteria but use that terminology in this removal notice to describe the County's allegations and contentions.

8

25.     Notwithstanding the County's omitting Department of Defense claims from its February 14, 2022 Red Flag Analysis, that submission appeared to suggest that the County was still seeking to hold the PBMs liable for prescription claims adjudicated or processed for other federal health plans. So the PBMs notified the County by letter on March 10, 2022 that they intended to remove this action to federal court unless the County "inform[ed] the PBM Defendants in writing on or before March 14, 2022, that it is withdrawing all challenges to federal prescription claims and will not seek recovery from the PBM Defendants based on the federal prescription claims—including but not limited to claims under the Federal Employee Health Benefit Act and claims adjudicated or processed for a plan controlled or sponsored by a federal governmental department or entity (for example, the Department of Defense)."

26.     The County responded in writing on March 11, 2022, stating that the "County agrees it is not challenging federal prescription PBM claims (including seeking recovery from the PBMs for same) in the instant state court proceeding."

### *The Two Stipulations Regarding Federal Plans*

27.     To memorialize that position, the County entered into a Joint Stipulation and Consent Order with the PBMs on March 16, 2022. The stipulation provided that the County "will not now or at any time in the future in this state court litigation seek to establish liability against any of the PBM Defendants in connection with any Federal Plan." Exhibit D at ¶ 1.

28.     The stipulation defined "Federal Plan" as "any health care plan that is fully or partially funded by the federal government, any plan that is administered for any federal agency, or any plan that is delegated for administration by any federal agency. Federal Plans include, but are not limited to TRICARE, Federal Employment Health Benefits Act ('FEHBA') plans, Employer Group Waiver Plans ('EGWP'), and Medicare Part D plans." *Id.*

Add.14

expanded § 1442(a)(1) . . . ."). This new test echoes how the Supreme Court has interpreted the phrase "relating to," which is a "broad" phrase meaning "to stand in some relation; to have bearing or concern; to pertain; refer; to bring into *association with or connection with*." *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383 (1992) (emphasis added) (citation omitted).

76.     Both Express Scripts and OptumRx satisfy the "connection" requirement.

> **1.     There is a Connection Between the County's Liability Theories and Express Scripts' Alleged Conduct.**

77.     Just as in *Frederick County*, Jefferson County claims here that Express Scripts is liable as a PBM because it "used a formulary that caused more opioids to be dispensed in its community than were medically and clinically necessary." 2023 WL 166006, at *5. For example, one of the County's liability expert opines that Purdue Pharma's widely recognized wrongful conduct would not have occurred but for the "preferred formulary position [for Purdue Pharma opioids] on Express Scripts . . . formularies." The County further claims that Express Scripts should have implemented greater restrictions—through utilization management (such as prior authorizations or quantity limits)—on the insurance coverage its client health plans provide for prescription opioids dispensed in Jefferson County.

78.     The County's liability expert reports make unambiguously clear—for the first time—that the County is seeking to support its liability claims against Express Scripts based on the work Express Scripts performed at the behest of the federal government. The County's liability experts conducted a "red flag" analysis of data produced by Express Scripts and by retail pharmacies regarding the number of prescription opioids dispensed in Jefferson County and its neighboring counties for which Express Scripts processed insurance claims. Based on that analysis, the County's experts opine that Express Scripts processed tens of thousands of insurance claims for prescription opioids dispensed in the Jefferson County area between 2006 and 2019 that

met the County's "red flag" criteria. Many of those claims Express Scripts processed at the direction of TRICARE, FEHBP plans, or other federal plans. The County's experts opine that the "opioid epidemic could have been greatly abated" had Express Scripts implemented different formularies, utilization management, and/or clinical programs that denied those "red flag" insurance claims—including claims for TRICARE and FEHBP plans.

79. Because the County's experts rely in part on data from retail pharmacies that do not identify the health plan that covered each prescription, it would be impossible to carve out which particular "red flag" prescriptions were for members of TRICARE or FEHBP plans even if the County's liability experts had tried to do so (which they did not). Instead, the County's experts opine that Express Scripts should be liable for "every opioid sold," irrespective of whether the prescription opioid was dispensed to a member of TRICARE, a FEHBP plan, or another plan.

80. In addition, some of the County's "red flags" are contingent on other "red flags." For example, the County's experts flag all prescriptions attributable to the top 20 opioid prescribers and the top 50 patients based on opioid utilization, but whether a particular prescriber or physician falls within those categories depends on which prescriptions are counted. Or take the County's experts' application of a "recurrent flag" computation—which flags all later claims by the same prescriber or for the same patient if an initial claim was flagged by one of the County's 20 "red flag" criteria. Applying that "red flag" results in the identification of thousands of "red flag" claims for prescription opioids processed through non-federal health plans based entirely on an initial "red flag" of a claim processed through a federal health plan, like TRICARE or a FEHBP plan. There is no way to disentangle federal claims from non-federal claims based on the County's liability expert's reports.

81.     Further, the County's liability experts reports contend that the PBMs must provide "abatement" for the entire opioid epidemic in Jefferson County, and the County's proposed abatement plan seeks abatement in connection with the aggregate impact of *all* opioid prescriptions dispensed in the County, including those to TRICARE and FEHBP plan members.

82.     As explained above, DoD specifies the formulary for TRICARE members as well as the requirements and restrictions that Express Scripts must adhere to when adjudicating claims by TRICARE members for prescription opioids and other FDA-approved medications. And OPM likewise imposes rules and guidelines governing formularies for FEHBP plans. In other words, the County seeks to hold Express Scripts liable for adhering to its contracts with federal health plans—that is, for allegedly failing to implement restrictions on insurance claims for prescription opioids that differed from what DoD and OPM directed Express Scripts to implement for TRICARE and FEHBP plan members.

83.     The conduct alleged against Express Scripts is therefore caused by, connected to, and associated with the very tasks that it must carry out for TRICARE and FEHBP plans.

84.     The County's liability experts separately opine that Express Scripts collaborated with Purdue Pharma "in several crucial ways to expand the pain treatment market and flood the market with opioids." In particular, the County's experts point to Purdue Pharma's misconduct detailed in Purdue's October 2020 guilty plea and settlement agreement with the United States. That 2020 settlement agreement explains that Purdue caused false and fraudulent insurance claims for prescription opioids to be submitted for payment to "the TRICARE Program" and "FEHBP." Exhibit G at p. 3-4 ¶ I, p. 12-13 ¶ c. In other words, through its allegations of collaboration with Purdue, the County's liability experts seek to pin liability on Express Scripts in connection with its work processing insurance claims for prescription opioids for TRICARE and FEHBP plans.

24

Add.17

85.     Express Scripts' challenged conduct was thus for or relating to acts under the color of federal office for purposes of the federal-officer removal statute. *See Arlington Cnty.*, 996 F.3d at 256–57 ("Arlington faults the ESI Defendants for filling certain opioid prescriptions and causing a public nuisance, but the ESI Defendants were required to fill those prescriptions to comply with their duties under the DOD contract because they had no ability to modify the contract. . . . [That] mean[s] that Arlington's claims 'relate to' the ESI Defendants' governmentally-directed conduct."); *Frederick Cnty.*, 2023 WL 166006, at *5–6 ("[T]he Court finds that the Express Scripts Defendants have demonstrated a causal nexus between actions performed pursuant to the DoD contract and Plaintiffs' [opioid] lawsuits.").

### 2.     There is a Connection Between the County's Liability Theory and OptumRx's Alleged Conduct.

86.     The connection element is satisfied here as to OptumRx as well.

87.     As with Express Scripts, the County's liability expert reports make clear for the first time that the County is seeking to support its liability claims against OptumRx based on the work OptumRx performed at the behest of the federal government. The County's liability experts conducted a "red flag" analysis of data produced by OptumRx and by retail pharmacies regarding the number of prescription opioids dispensed in Jefferson County and its neighboring counties for which OptumRx processed insurance claims. Based on that analysis, the County's experts opine that OptumRx processed tens of thousands of insurance claims for prescription opioids dispensed in the Jefferson County area between 2010 and 2019 that met the County's "red flag" criteria, including prescription claims that OptumRx processed at the direction of the Veterans Health Administration or other federal plans.

88.     Because the County's experts rely in part on data from retail pharmacies that do not identify the health plan that covered each prescription, it would be impossible to carve out which

25

particular "red flag" prescriptions were for members of the VHA plan even if the County's liability experts had tried to do so (which they did not). In addition, some of the County's "red flags" are contingent on other "red flags." For example, the County's experts flag all prescriptions attributable to the top 20 opioid prescribers and the top 50 patients based on opioid utilization, but whether a particular prescriber or physician falls within those categories depends on which prescriptions are counted. Or take the County's experts' application of a "recurrent flag" computation—which flags all subsequent claims by the same prescriber or for the same patient if an initial claim was flagged by one of the County's 20 "red flag" criteria. Applying that "red flag" results in the identification of thousands of "red flag" claims for prescription opioids processed through non-federal health plans based entirely on an initial "red flag" of a claim processed through a federal health plan, like the VHA. There is no way to disentangle federal claims from non-federal claims based on the County's liability expert's reports.

89.     Further, the County's liability expert reports contend that the PBMs must provide "abatement" for the entire opioid epidemic in Jefferson County, and the County's proposed abatement plan seeks abatement in connection with the aggregate impact of *all* opioid prescriptions dispensed in the County, including those to VHA and other federal health plan members.

90.     As explained above, the VHA constructs its own formulary and prior-authorization criteria. OptumRx is not entitled to direct, change, or engage in the formulation of VHA policy. OptumRx adjudicates prescription opioid claims for the VHA based on the VHA's formulary and pricing logic.

91.     In administering the formulary design for the VHA plan, and by adjudicating prescription opioid claims for that health plans, OptumRx at all times acted at the direction of the federal government and in accordance with contractual obligations.

26

Add.19

Electronically Filed - Jefferson - March 16, 2022 - 02:19 PM

# IN THE CIRCUIT COURT OF JEFFERSON COUNTY
## STATE OF MISSOURI

JEFFERSON COUNTY,

      Plaintiff,

      v.

DANNIE E. WILLIAMS, M.D., *et. al.*,

      Defendants.

**Case No. 20JE-CC00029**

## JOINT STIPULATION AND [PROPOSED] ORDER REGARDING FEDERAL PLANS

Plaintiff Jefferson County and Defendants OptumRx, Inc.; Express Scripts, Inc.; Evernorth Health, Inc. (formerly "Express Scripts Holding Company"); Express Scripts Pharmacy, Inc.; CVS Pharmacy, Inc.; Caremark L.L.C.; Caremark PCS Health, L.L.C. (collectively, the "PBM Defendants")[1] stipulate as follows:

**WHEREAS**, on February 14, 2022, Jefferson County served the PBM Defendants with responses to Interrogatories identifying the claims at issue. The PBMs have informed Jefferson County that those responses include federal prescription claims adjudicated or processed by the PBM Defendants, including but not limited to claims adjudicated or processed for plans controlled or sponsored by federal government agencies or entities as well as claims adjudicated or processed under Medicare Part D plans;

**WHEREAS**, on March 10, 2022, the PBM Defendants notified Jefferson County by letter of their intent to remove this action to federal court unless Jefferson County "informs the PBM Defendants in writing on or before March 14, 2022, that it is withdrawing all challenges to federal prescription claims and will not seek recovery from the PBM Defendants based on the federal

---

[1] The CVS entities are included in this stipulation solely as to their activities as PBMs.

Add.20

prescription claims—including but not limited to claims under the Federal Employee Health Benefit Act and claims adjudicated or processed for a plan controlled or sponsored by a federal governmental department or entity (for example, the Department of Defense)";

**WHEREAS**, on March 11, 2022, Jefferson County informed the PBM Defendants in writing that the "County agrees it is not challenging federal prescription PBM claims (including seeking recovery from the PBMs for same) in the instant state court proceeding," and that "[t]o the extent prior interrogatory responses have caused confusion on this issue, the County agrees to revise to clarify";

**WHEREAS**, Jefferson County and the PBM Defendants wish to enter this agreement to obviate any dispute regarding the scope of prescription claims at issue in this litigation;

**ACCORDINGLY, IT IS STIPULATED AND AGREED**, between Jefferson County and the PBM Defendants, that:

1.  Jefferson County will not now or at any time in the future in this state court litigation seek to establish liability against any of the PBM Defendants in connection with any Federal Plan. A "Federal Plan" means any health care plan that is fully or partially funded by the federal government, any plan that is administered for any federal agency, or any plan that is delegated for administration by any federal agency. Federal Plans include, but are not limited to TRICARE, Federal Employment Health Benefits Act ("FEHBA") plans, Employer Group Waiver Plans ("EGWP"), and Medicare Part D plans.

2.  Jefferson County will not now or at any time in the future in this state court litigation take the position or pursue any argument suggesting that the PBM Defendants' conduct relating to prescription claims for Federal Plans caused an oversupply of prescription opioids in Jefferson County, contributed to the theories of liability against the PBMs upon which Jefferson County bases its lawsuit, or caused or contributed to the harms for which Jefferson County seeks recovery.

Electronically Filed - Jefferson - March 16, 2022 - 02:19 PM

3.      Jefferson County will not now or at any time in the future in this state court litigation pursue any remedy that would interfere with or otherwise affect any Federal Plan, including but not limited to any remedies that would interfere with or affect the formularies, utilization management policies and programs, or administration of any Federal Plan.  Jefferson County agrees that it will not now or at any time in the future pursue any remedy that would interfere with or otherwise affect the uniform administration of the TRICARE program or the provision of healthcare services to U.S. military servicemembers, veterans, and their beneficiaries.

4.      For the avoidance of doubt, the Federal Plan carriers covered by this Stipulation include, but are not limited to, the carriers listed in Appendix A.  The PBM Defendants reserve the right to supplement this list at any time if they identify additional Federal Plan carriers. If a PBM Defendant supplements Appendix A in the future, Jefferson County reserves the right to object to the inclusion of any new addition that is not a Federal Plan as defined in Paragraph 1.

5.      Except as expressly set forth herein, nothing in this stipulation limits the PBM Defendants' or Jefferson County's rights in this litigation in any way, including the PBM Defendants' or Jefferson County's rights to introduce evidence and present arguments and defenses.

6.      Jefferson County withdraws any prior statements made or positions taken that are inconsistent with the terms of this Stipulation.

**SO ORDERED**, this __17__ day of March, 2022.

_____

Hon. Joseph Rathert

Dated: March __17__ , 2022

3

Add.22

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | |
|---|---|
| JEFFERSON COUNTY, | |
| Plaintiff, | |
| | Case No. 4:23-cv-01539 |
| v. | |
| DANNIE E. WILLIAMS, M.D., et al., | Hon. Matthew T. Schelp |
| Defendants. | |

### DECLARATION OF THOMAS D. JENKINS

I, Thomas D. Jenkins, declare pursuant to 28 U.S.C. § 1746 as follows:

1.      I am over the age of 18 and competent to provide this Declaration in Support of Defendants' Opposition to Plaintiff's Motion to Remand.

2.      I have personal knowledge of the matters stated herein, and they are true and correct to the best of my knowledge. I authorize the use of this Declaration in connection with the above-captioned lawsuit.

3.      I currently hold the title of Vice President, Account Management, Department of Defense and Veteran Programs with Express Scripts, Inc. (**Express Scripts**).

4.      In that capacity, I am familiar with Express Scripts' government contracts and business relationships with government entities.

5.      Express Scripts works with the United States Department of Defense (**DoD**)—pursuant to Congressional mandate—through a contract issued and administered by the Defense Health Agency (**DHA**), a component of DoD. DoD is Express Scripts' largest client in terms of covered lives and drug spend. Under the contract, Express Scripts provides pharmacy benefit

 Internal Information

1

Add.23

management (**PBM**) services and mail-order pharmacy services for DoD's healthcare program, TRICARE (**TRICARE Contract**). I am responsible, on behalf of Express Scripts, for managing the Statement of Work (**SOW**) for the TRICARE Contract between DoD and Express Scripts.

6.      Pursuant to the TRICARE Contract, Express Scripts helps DoD, among other things: process pharmacy claims; ship medications to beneficiaries through a home delivery pharmacy; maintain a retail pharmacy network consistent with DoD requirements; and act as a fiscal intermediary between DoD and retail pharmacies. DoD requires Express Scripts to administer a formulary to charge TRICARE beneficiaries copayments on the terms and in the amounts dictated by the government, which also dictates whether and when Express Scripts is to apply prior authorizations, step therapies, and other clinical review requirements. Rates on the TRICARE formulary are set according to DoD's clinical review requirements and are negotiated between the federal government and drug manufacturers.

7.      Express Scripts has provided PBM and pharmacy services for TRICARE beneficiaries for two decades. In 2003, Express Scripts started operating the TRICARE Home Delivery/Mail Order Pharmacy (**TMOP**), which helps DoD meet its statutory obligation to deliver prescription medications directly to TRICARE beneficiaries by mail. In 2004, DoD elected to renew and expand its relationship with Express Scripts, adding a retail pharmacy network (2004) and specialty pharmacy services (2009) to the services that Express Scripts offered to the DHA. In 2021, DoD again extended its relationship with Express Scripts through 2029.

8.      Based on information available to me, I understand that between 2009 and 2018, Express Scripts adjudicated more than 18,000 claims for prescription opioids by TRICARE members residing in Jefferson County, Missouri.

9.      Under its TRICARE Contract with DoD, Express Scripts is directed by DoD to, among other things: (1) administer a formulary created by DoD's own Pharmacy & Therapeutics

 Internal Information

2

Add.24

(**P&T**) Committee, (2) charge TRICARE beneficiaries copayments pursuant to the terms and in the amounts dictated by the government, (3) apply clinical review requirements under DoD direction, and (4) dispense medications at the TMOP that are replenished by the National Prime Vendor through a separate government contract administered by the Defense Logistics Agency.

10.     The TRICARE Contract additionally requires Express Scripts to establish and maintain a nationwide retail pharmacy network. Express Scripts negotiates and contracts with tens of thousands of retail pharmacies for network participation.

11.     Express Scripts also has thousands of commercial clients to which it provides PBM services, including employers, unions, health plans, and other groups that provide health/pharmacy benefits to their members and members' beneficiaries. The bulk of these clients rely upon Express Scripts to provide and maintain a network of pharmacies that the beneficiaries of clients may use to fill prescriptions.

12.     Express Scripts contracts with pharmacies to participate in its pharmacy networks and negotiates discounts from those contracted pharmacies that reduce the cost to Express Scripts' clients of the drugs dispensed by contracted pharmacies. Express Scripts does not negotiate separate agreements with retail pharmacies for each of its thousands of clients. Rather, Express Scripts negotiates with retail pharmacies to participate in a multitude of Express Scripts pharmacy networks, including networks for commercial clients as well as TRICARE. As a result of these negotiations, Express Scripts is able to offer robust nationwide networks to DOD and commercial clients at significantly lower costs than if such networks were negotiated piecemeal on behalf of each individual client.

13.     DoD policies and procedures require Express Scripts to incorporate specific terms into its agreements with retail pharmacies and to be subject to DoD oversight. For example, pursuant to DoD directives, these retail pharmacies must meet certain credentialing standards, are

 Internal Information

3

subject to audit by DoD or by Express Scripts at DoD's direction, and Express Scripts is required to provide reports on network retail pharmacies. Moreover, retail pharmacies are required to provide the same quality of services they provide to commercial beneficiaries. Express Scripts works to ensure compliance with DoD policies through its contracting with pharmacies, oversight, auditing, and reporting to DoD.

14.     Express Scripts is subject to significant and ongoing supervision by DoD and DHA officials. DoD dictates almost all of Express Scripts' responsibilities in supporting TRICARE. Specifically, the TRICARE Contract requires the use of the DoD Uniform Formulary, a tiered cost-sharing structure, and a preference for generic over branded products.

15.     Representatives of Express Scripts are the primary client contact and regularly meet with representatives of DoD to discuss performance of the DoD contract, including mail order pharmacy administration. Express Scripts representatives brief DoD representatives weekly and have a formal program review three times a year. There is also daily interaction between Express Scripts and DoD representatives regarding contract administration and execution. Express Scripts communicates guidance and instruction from DoD or other government representatives to the ESI Mail Pharmacy as needed to execute the SOW. Representatives of the ESI Mail Pharmacies also interact with DoD representatives. For example, DoD representatives interact directly with ESI Mail Pharmacy employees during some audits that are performed under the contract.

16.     It is my understanding that Express Scripts also provides PBM and pharmacy services to current and certain retired federal employees under contracts with Federal Employee Health Benefits Act (**FEHBA**) plans. As a result, Express Scripts must comply with requirements of the United States Office of Personnel Management (**OPM**), FEHBA's administrator.

**I** Internal Information

4

17.   As with TRICARE, it is my understanding that Express Scripts provides PBM and pharmacy services to a significant number of federal employees across the country through FEHBA, including individuals in Jefferson County, Missouri.

18.   It is my understanding that OPM contractually requires that FEHBA carriers include in any contract with a PBM certain provisions relating to formularies and manufacturer payments.

19.   It is my understanding that when Express Scripts administers FEHBA plans, it is subject to all OPM contractor requirements, audits by OPM, and is under OPM direction and supervision.


I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on this 9th day of January, 2024 at St. Louis, Missouri.


_Thomas D. Jenkins_ (signature)

Thomas D. Jenkins

Internal Information

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on June 26, 2024, an electronic copy of the Addendum to Joint Brief of Defendants-Appellants was filed with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. The undersigned also certifies that all participants in this case are registered CM/ECF users and that service of the Addendum will be accomplished by the CM/ECF system.

*/s/ Jonathan G. Cooper*
Jonathan G. Cooper